The People ex rel. Daniel Green et al., Commissioners of Highways, etc., Respondents, *v.* The Dutchess and Columbia Railroad Company, Appellant.

It is not every variation between an alternative and a peremptory writ of mandamus which will cause the latter to be set aside. Where the substance of the two writs is the same, both commanding the doing of the same act but differing in some immaterial matter of detail as to the method of doing it, and where the act is one, defendant is legally obligated to do, and the variance is to his ease not to his distress, the peremptory writ will be sustained.

While a railroad corporation has a discretion as to the manner of perform-

1874.] People ex rel. Green et al. *v.* D. & C. R. R. Co. 153

Statement of case.

ing the duty imposed upon it by the general railroad act (sub. 5, § 28, chap. 140, Laws of 1850) of restoring a highway across or along which its road has been constructed, the discretion is a ministerial one; the act of restoration must be done, as to this there is no discretion. If it elects a manner which proves ineffectual and yet it claims to have performed its duty, and the aid of the court is invoked by the commissioners of highways to compel, by mandamus, the performance, the court has power to and should point out in the writ in what the corporation has failed and to direct particularly what must be done so that it may not fail again.

The duty of restoration so imposed carries with it the necessary powers for that purpose, and among them the power to take lands compulsorily where a removal or a change of the highway is necessary; and to accomplish this such lands must be acquired.

A writ of mandamus, therefore, directing such removal is not subject to the objection that it commands an impossibility or an unlawful act.

*It seems*, that if, in proceedings to take the lands compulsorily, the corporation should be defeated upon the merits, not from their own default or miscarriage, this would be a good answer if it were proceeded against for contempt in not obeying the writ.

In proceedings by mandamus to compel a railroad corporation to restore a highway, the court adjudged and commanded that the track of the highway for travel, at a certain specified place, for a short distance, should be changed from one side of the railroad track to the other so as to avoid the necessity and the danger of two crossings. *Held*, that this was not a discontinuance of the highway but that for all practical uses and purposes it remained the same, and that the change was within the power of the court to direct.

The authorities upon the question of variance between an alternative and peremptory writ, and as to the proper form of the writ, collated and distinguished.

Upon return to an alternative writ of mandamus an order of reference was entered by consent " to hear and determine the whole issues of fact in the case." The report of the referee stated his findings of fact, and his report was accompanied by the evidence. Both parties were heard thereon as well as on the report, without objection; and the justice holding the Special Term, attended by the attorneys of the respective parties, viewed the premises in question, without objection. In his decision he disregarded some of the referee's findings of fact. *Held*, that if the order should be interpreted as directing a report of the facts, and thus, as having the effect of a special verdict (Code, § 272), leaving nothing for the court but the determination of questions of law, yet the parties having dealt with it differently, such an effect could not be claimed for it upon appeal.

(Argued April 15, 1874; decided September 22, 1874.)

APPEAL from judgment of the General Term of the Supreme Court in the second judicial department, affirming a judgment awarding a peremptory writ of mandamus against the defendant, directing it to restore a highway over which it had constructed its road, as required by the general railroad act. (Sub. 5, § 28, chap. 140, Laws of 1850.)·

The relators, as commissioners of highways of the town of Fishkill, Dutchess county, applied for and obtained an alternative writ of mandamus which alleged, in substance, that defendant constructed its track over and along a public highway between Fishkill and Fishkill Landing, in said town; four sections thus taken and used of said highway were particularly set forth, and it was alleged that they had not been restored, · but that their usefulness had been unnecessarily impaired. The writ directed defendant to restore said sections to their former state, or to such state as not unnecessarily to impair their usefulness — specifying the changes required for that purpose, the width of the restored tracks, etc. The defendant made a return, substantially alleging that it had restored the highway so far as possible, and that its usefulness was not unnecessarily impaired. The relators joined issue upon the return, and an order of reference was entered by consent, referring it to a referee "to hear and determine the whole issues of fact in the cause." The report of the referee found the facts mostly in favor of relators; but, as to one of the sections, that the impairment, save as modified according to his suggestions, was necessary and could not be avoided.

. The report was accompanied by the evidence and a map of the highway in question, showing the portions thereof affected, and the changes required.

The judgment of the Special Term recited that the motion therefor was made upon the report and the evidence, both parties being present and heard thereon, and that a personal inspection of the premises was made by the justice holding the term, attended by the attorneys of the respective parties. It directed the issuing of a peremptory writ commanding

defendants to restore the highway in question as specified therein. The method specified was in some respects a modification of that specified in the alternative writ, requiring less change and being less burdensome and expensive. At one point, where defendant's tracks crossed the track of the highway twice within a short distance, the judgment directed the track of the highway between the crossings to be moved from the west to the east side of the railroad track, thus avoiding the necessity and the danger of the crossings. The judgment differed from the findings of the referee as to the necessity of the impairment of the section specified by him, and directed the restoration thereof. Further facts appear in the opinion.

*Milton A. Fowler* for the appellant. The judgment and peremptory writ should follow the alternative writ and direct no more and no less. (1 Redf. on Railways, 649; *Y. and N. M. R.* v. *Milner*, 3 R. Cas., 74; *People* v. *Suprs. of Dutchess*, 1 Hill, 50; *People* v. *Baker*, 35 Barb., 106, 110; *People* v. *Brennan*, 45 id., 457; *McSpedon* v. *Bd. Suprs.*, 18 How., 159.) The office of mandamus is simply to set in motion, it cannot direct the manner of doing a thing, when the party to do it is vested with any discretion. (*People* v. *Suprs. of Dutchess*, 1 Hill, 50; *People* v. *Suprs. of N. Y.*, id., 362; *People* v. *Baker*, 35 Barb., 105; *People* v. *Suprs. of Del.*, 45 N. Y., 196–200; *Wademan* v. *A. and S. R. R. Co.*, 51 id., 568–570; *Holmes* v. *Seeley*, 19 Wend., 510.) A mandamus cannot be issued to compel an impossibility, or the performance of an unlawful act. (*R. and S. R. R. Co.* v. *Davis*, 43 N. Y., 137–147; Chap. 237, Laws of 1869.) The fifth finding of the referee was in the nature of a special verdict and binding upon the court. (Code, § 272; *Hill* v. *Covill*, 1 N. Y., 322; 8 Cow., 413, 414; *Langly* v. *Warner*, 3 N. Y., 327.)

*Samuel Hand* for the respondents. Mandamus was the proper remedy to compel the fulfillment of the requirements of the statute. (Redf. on Railways, 455, 466; *People ex rel.*

*Schaghticoke* v. *T. and B. R. R. Co.*, 37 How., 427, affirmed in Ct. of Apps., Nov., 1870; *People* v. *Vt. and C. R. R.*, 24 N. Y., 269; *Reg.* v. *Y., etc., R. Co.*, 6 Eng. R. Cas., 648; Code, § 471; Laws of 1855, chap. 255, p. 386, § 1.) No discretion was vested in defendant to decide what would not unnecessarily impair the highway. (*Reg.* v. *E. Co. R.*, 3 Eng. R. Cas., 22; *Rex* v. *Ouze Bk. Comrs.*, 3 Ad. & El., 544, 550; *Reg.* v. *Bristol Dock Co.*, 2 Q. B., 64; *Reg.* v. *Bristol, etc., R.*, 4 id., 162; *People* v. *Suprs. of Del.*, 45 N. Y., 206; *People* v. *Suprs. of Otsego*, 51 id., 408; *Wademan* v. *A. and S. R. R. Co.*, id., 568; *People* v. *Baker*, 14 Abb., 19; *People ex rel. Livingston* v. *Taylor*, 30 How., 78.) Defendant was required to absolutely restore the highway to its former state. (*Reg.* v. *B. and G. R. Co.*, 2 Ad. & El. [N. S.], 47; *Cott* v. *Lewiston R. R. Co.*, 36 N. Y., 214; *T. and B. R. R. Co.* v. *North. R. R. Co.*, 16 Barb., 105.) It is no valid objection to the proposed peremptory writ that it does not command so much as is suggested by the alternative writ. (*People* v. *Van Nostrand*, 46 N. Y., 375; Code, § 471, as amended in 1863; id., §§ 169, 170, 173; *Bank* v. *Magee*, 20 N. Y., 360; *Johnson* v. *Hathorn*, 3 Keyes, 237; *Bate* v. *Graham*, 1 Kern., 237; *Pratt* v. *H. R. R. Co.*, 21 N. Y., 305; *People* v. *Ransom*, 2 Comst., 490.) The conclusions of the referee were not binding upon the court. (*Beach* v. *Cooke*, 28 N. Y., 508.) The first duty of the defendant is to restore the road to its former state, and that must be done without reference to cost. (*Reg.* v. *Wycomb R. Co.*, L. R. [2 Q. B.], 310; *Reg.* v. *B. and G. R. Co.*, 2 Q. B., 47; *N. and W. R. R. Co.* v. *Killingly*, 25 Conn., 406; *Cott* v. *Lewiston R. R. Co.*, 36 N. Y., 214.) It is no objection to the mandamus that it requires something to be done which necessitates legal proceedings. (Tapping on Man., 243, and cases cited; *Reg.* v. *Y., etc., R. Co.*, 6 Eng. R. Cas., 648; 22 Barb., 404; 1 id., 34; 13 How., 279.) This court may modify any error or excess in the requirements of the writs, if there are any, in accordance with right, without a total reversal. (*People* v. *Suprs. of Del.*, 45 N. Y., 206.)

Folger, J.  The first point made by the appellant is this: That the peremptory writ does not follow the alternative writ, in that it directs less to be done by the appellant than does the alternative writ.  In fact, the direction of the peremptory writ is different from that of the alternative. The difference is, however, in some of the details only of the general command.  It does not differ in substance, nor in the general matter commanded.  There is but one thing directed to be done — one in its substance, and in its result.  That is, to restore the public highway to the condition of usefulness in which it was found by the appellant when it interfered with it.  In specifying the particular work to be done, to effect the general thing commanded, it varies somewhat.  It does not, however, direct more work to be done, neither as to extent, as to number of acts, as to difficulty, nor as to expense. On the contrary, though it commands a restoration of the highway, it directs that it be done in a manner less onerous upon the appellant in those particulars than the mandate of the alternative writ.

The question then, is, whether a peremptory mandamus is to be superseded, when, though its general command is the same as that of the alternative writ, it varies in unsubstantial matter of detail, to the ease of him to whom it is addressed. It has, undoubtedly, been often asserted as a rule that the peremptory writ may not depart from the alternative.  This rule has been stated in terms which would sustain the point made by the appellant.  So it is found in the text books. It is said: "A peremptory mandamus cannot be limited, but must be in exact accordance with the writ upon which it is founded, so that if such writ be bad the court will refuse to grant a peremptory mandamus thereupon." (Tapping on Man., p. * 402.)  And, also: "The court cannot mould the writ on an application for a peremptory mandamus." (Id., p. * 305.)  And, "A mandamus must be made out according to the rule for it, or it will be superseded." (Comyns' Dig., tit. Man., a.)  In Redfield on Railways (vol. 1, 649), it is said that: "It seems to be well settled in English prac-

tice that if the writ issue in the first instance for something which the defendant is not bound to do, it cannot be supported, even as to those things which it is compelled to perform. But if the alternative writ commands more than is necessary to be done to comply with the statute, it will be quashed, notwithstanding the party might be entitled to the remedy, to a certain extent."

The lately published book, High on Extraordinary Legal Remedies, states it as " a well settled principle, that the peremptory writ must conform strictly to the alternative mandamus; " " that if the alternative writ commands the doing of several things, it is incumbent upon the relator, in order to entitle himself to the peremptory writ, to show that he is entitled to the performance of all the things specified." He adds, however : " If he fails in *any substantial part*, in establishing his title to any of the things sought, there can be no peremptory mandamus."

But the propositions of text books, and the notes of digests, are to be tested by the facts of the cases cited, and the language of the court therein. Thus, Comyn bases his statements upon *Rex* v. *Wildman* (2 Strange, * 879). In that case, it appears that a mandamus was moved, requiring the defendant to deliver to a company all books and papers which he had in custody, by virtue of having been their clerk, from which office he had been removed. The rule granted by the court, was framed by its officer, to deliver them to the new clerk. The writ was made out in accordance with the motion, that they be delivered to the company. It was held to vary from the rule, and was superseded. Here it is seen that there was in the writ a substantial departure from the rule, and the writ might well be superseded. The case does not hold, nor is it an authority for saying, that every variation in matter, not of substance nor to the distress of the defendant, of the peremptory writ from the rule absolute, or from the alternative writ, will cause it to be set aside. In Tapping on Mandamus at the pages as above, numerous cases are cited, to which I have turned. I do not think that they uphold his propo-

sitions in the unqualified form in which he has put them.  I think that the rule to be drawn from them is this: That where the alternative writ, or the rule absolute, has been for the doing of something, to command which there was no power given by the statute on which the proceedings were based, that there the question not being of a variation in the detail, or of the exercise of the discretion of the court as to means, but of whether there was the power or not to command the doing of the substantial act, the court will not award a peremptory mandamus commanding the doing of substantially a different thing.  Thus in *The King* v. *The Church Trustees of St. Pancras* (3 Ad. & El., 535); *Rex* v. *Water Eaton* (2 Smith, 54), the defendants were bound by act of parliament to meet and account to certain auditors.  The auditors were required to meet twice in each year, *at the board room of the vestry*, and the vestry was required, *at every such meeting*, to produce a true account in writing.  The alternative mandamus called upon the board to produce their accounts to the auditors *at such* time *and place as the auditors might appoint.*  It was held that the mandamus exceeded the authority given by the act, and that the court could not in part enforce it, by a peremptory mandamus, limited as to the place of meeting. The writ must be in conformity with the legal obligation of the defendant.  If it exceed it, it will be quashed, or a peremptory writ denied.  But if the substance of the writ is, that the defendant do an act which he is legally obliged to do, and the details of how it shall be done be introduced into it, the peremptory writ may order the act done, for that is in conformity with the legal obligation, and it is in conformity with the alternative writ, though it vary the detail of the manner of doing.  There is still nothing put upon the defendant but that which he is by law obliged to do.  I think that the meaning of the decision is, that the peremptory writ must not materially enlarge the substantial terms of the rule absolute, or of the alternative writ, nor exceed them beyond adding merely incidental requirements.  Thus in *Rex* v. *Nottingham Water-works* (1 Nev. & P., 480; S. C., 6 Ad.

& El., 355) it is said : " It is quite clear that if we should be of opinion that the rule has asked too much in praying for damages and costs, we may grant what part of the rule we think proper." And to the same effect is *The King* v. *Commissioners of Navigation* (5 Ad. & El., 804), in which there had first been an alternative writ. There is good reason why the peremptory writ may not be changed so as to extend beyond the order granting it, or beyond the alternative writ, and so as to include other matters ; for in such case the right involved could, at the will of the party, be made to depend upon a state of facts never presented nor contemplated by the court. (7 East, 345 ; 4 Cow., 73.) As where the rule was that the mayor, etc., should assemble and keep courts, and do the office of the corporation ; but the clerk in issuing the writ added, "and to admit all those to their freedom who have a right to be free of that corporation." (*Rex* v. *Mayor, etc., Kingston-upon-Hull,* 8 Mod., * 209.) The same reason does not have force where, upon the return to an alternative writ, a peremptory writ is ordered, to follow the former in its general substantive command, but to vary from it to the ease of the defendant in some of the requirements, incidental to the general matter. The passage cited from Redfield on Railways (see *supra*) relies upon several English decisions. I think that all of them will be found to rest upon this : That there was no legal obligation upon the defendant to do some of the things commanded by the alternative writ ; and as the peremptory writ could not be issued to command those to be done, it would not be granted to command those to do which there was a legal obligation. The language used is sometimes this : "If he fails of establishing this as to any substantial part, there can be no peremptory mandamus at all." "If a writ is for two matters and fails as to one, it fails as to both." (*Per* Campbell, Ch. J., and Erle, J., in *Reg.* v. *East and West Ind. Docks, etc.,* 2 Ell. & Bl., 466.) "If any part of what is commanded by a peremptory mandamus goes beyond the legal obligation, the whole writ must be set aside." (*Per* Campbell, Ch. J., in *The Queen* v. *The Cal. R. Co.,* 16 Ad.

& Ell. [N. R.], 19.) And in *York and North Midland Railway* v. *Milner* (3 Railway Cases, 774; 14 Ad. & Ell. [N. R.], 479), the writ was quashed because it required more ' than the act of parliament enjoined. The book of Mr. High cites *The Queen* v. *East and West India Docks, etc.* (2 Ell. & Bl., 466), in which case it was held that a peremptory writ could not be granted; for that the relators showed no right to one of the things which the alternative writ commanded, but there were two substantially distinct things directed by it. He also čites cases from the Iowa reports. Although the language of the opinions is as broad as his propositions, the facts of the cases show that the relator had no right to that which was commanded by the alternative writ, or that no such question was presented as that arising here.

The defendant cites several cases from the reports of this State. The first of them is *The People* v. *Supervisors of Dutchess* (1 Hill, 50), and the others are based upon that. In that case the alternative writ commanded the defendants to do two things: First, to raise a sum of money for the repair and support of a bridge from all the towns of the county; second, to vacate a resolution of the defendants which required the money to be raised by two towns only. The court held that the defendants had no power to levy the money upon the two towns, and that, therefore, the relators were right in asking that the resolution therefor be vacated; and it also held that they were wrong in seeking to compel the defendants to raise the sum from all the towns. BRONSON, J., says: "As the writ demands too much, I think that there should be judgment for the defendants. * * * As to the thing required to be done the peremptory writ, when awarded, should follow the alternative mandamus. *I do not think it important to inquire whether there are any exceptions to this rule.*" It is plain that in this case the two matters, only one of which the relators were right in moving for, were each of them matters of substance, and that one of them was beyond the legal obligation of the defendants at that time. The last

remark of the learned justice which I have quoted, indicates that there may be exceptions to the general rule within which the case was brought by the facts and the law of it. (See, also, *People* v. *Nostrand*, 46 N. Y., 375, and the remark of Church, Ch. J., near the top of page 378.)

Now the whole substance of the alternative writ in this case is, that the defendant shall restore the public highway. The peremptory writ is to the same end. It differs from the former only in the extent and mode of the work it commands for the accomplishment of that end. It does not go upon the ground that there is no legal obligation upon the defendants to do that which the alternative writ commands, but that the legal obligation under which the defendants rest may be lightened and be performed in a manner somewhat less onerous to them. (3 Pick., 345.)

The second point made by the appellant is, that the peremptory writ may do no more than, in general terms, to direct it to restore the highway. It is claimed that there is a discretion reposed in it by the statute as to the manner in which the restoration shall be effected; that it is an engineering question, which the court cannot determine in a particular manner, when there may be other ways equally as good in result. It is true that the party who is to do an act has, in general, the election of the manner of doing it. It is as true that, if he elects a manner that is not effectual, and the act remains substantially undone, he is still under his liability to do it. He has no discretion whether he will or will not do the act. If he attempts to do it and does it not, still the court may command that he do it. In this case the appellant was under the duty to restore the highway. It essayed to do that duty in a way that the court below adjudges was not effectual. An alternative mandamus was issued, commanding it to restore the highway, and to take new action effectual to that end. It returned that it had restored the highway before the issuing of the writ. It would be idle to issue a peremptory writ again commanding it to restore the highway, and stopping with the reiteration of the general command only. The

court having ascertained, by the proofs of the parties, in what respects the action of the appellant has failed, may properly point out to it how to act so as not to fail again. Though in the first instance there may be a discretion with the appellant, it is not that which is known as judicial. That may not be commanded by mandamus to act in a certain way. The discretion here is a ministerial one. The act of restoration must be done. If the discretion as to mode of doing it is so well exercised as that the restoration is complete, that is well. The object of this action is to test that. The appellant insists that it had well exercised it. The court has determined that it had not. The court will and should point out to it, in what it has failed, and direct it particularly what it must do so as not to fail again. In *The King* v. *Bristol Dock Co.* (6 Barn. & Cress., 181) it was held not requisite nor proper to call, by mandamus, for any specific act of alteration, the mode having been left to the discretion of the company by act of parliament, and a general mandatory clause was approved. This was in 1827. Later than that, however, in *Regina* v. *East. Co. R.* (2 Ad. & Ell. [N. S.], 569), Lord DENMAN, C. J., said, that the form of the mandamus would have been better if it had stated what was required ; that he did not like the form which required compliance with the act in general terms. It is proper to add that in that case the writ was denied, though on other grounds. But it was not a new notion with him. (See *King* v. *Ouze Bk. Comrs.*, 3 Ad. & Ell., 544 ; see, also, *Regina* v. *Bristol Dock Co.*, 2 Ad. & Ell. [N. S.], 64.) It seems, that in this State the mandatory writ may go into particulars. (*People* v. *Sups. of Delaware*, 45 N. Y., 196 ; *The Same* v. *Sups. of Otsego*, 51 id., 408.)

The third point made by the appellant is, that a mandamus will not command that which is impossible. It is claimed that to obey the command of the peremptory writ, in this case, the appellant must acquire by compulsory measures additional land to that now owned by it ; and that it cannot now take such measures, for that it has no statutory power so to do. It is true that the court will not, by its writ of mandamus,

command a defendant to perform an impossibility. And it is so, that there must be express sanction and clear authority of law before a railroad company can condemn land for its purposes. (*Rens. and Sar. R. R.* v. *Davis,* 43 N. Y., 137.) But there is not in this case the difficulty which the appellant fears. Railroad companies are authorized to construct their track across, *along* or *upon* any highway which the route thereof shall intersect or *touch.* They are required to restore the highway to its former state, or to such state as not unnecessarily to have impaired its usefulness. (Laws of 1850, chap. 140, p. 22, § 24.) It is manifest that if the track is laid along or upon the highway the highway must itself be removed away from the track, or its usefulness will be impaired. The track of the railroad cannot be constructed and maintained upon a highway and the usefulness of the latter not impaired unnecessarily, as required by section 24, without a removal or change in the highway. It may be that such removal or change cannot be made without the taking of other lands, on to which it shall be removed. Hence, the acquisition of that land is required for the purposes of the incorporation of the company (id., § 13, p. 215); and is necessary for the construction, maintenance and accommodation of its railroad. (Id., § 28, sub. 3, p. 224.) The statute cited gives ample power to take compulsorily the land thus required. (Sections 14 *et seq.*) It is unnecessary to inquire whether chapter 237, Laws of 1869 (page 441), does not also give power. It follows, that it is possible to acquire the additional land, and that the writ does not command an impossibility nor an unlawful act.

The next point made by the appellant grows out of the last. It is, that a mandamus will never issue to compel one to do an act which he has not within himself the power to do. This proposition applied to this case is, that the appellant will not be compelled to restore the highway at a certain point, if lands must be acquired therefor by proceedings under the statute. But this writ has, not seldom, been sent to *quasi* public corporations directing them to action, which

required similar proceedings on their part. (*Reg.* v. *Birmingham R. W. Co.*, 2 Ad. & El. [N. S.], 47.) In that case, it was held that though the time in which compulsory proceedings might be taken had expired, that fact presented no reason why a mandamus should not go. *A fortiori*, may it go if the power to take such proceedings exists. The first position was questioned in *Reg.* v. *East. Co. R.* (10 Ad. & El., 531–557). The latter position was not.

To the argument of the appellant, that in proceedings to take lands compulsorily it might be defeated, it is to be answered: that if that result was upon the merits and not from its own default or miscarriage, it would be a good answer for it, if proceeded against as in contempt for not obeying the writ. The same court which adjudged that it should not take the land would not punish it for not taking it when permission to take could not be had.

The appellant further insists, that section 27, subdivision 5, above cited, expresses no legislative intention that the highway is to be widened or changed outside of its original limits ; and that the section is not susceptible of a construction to the contrary. The section allows a railroad company to construct its track upon a highway, but at the same time requires that it shall restore the highway to such a state as not unnecessarily to have impaired its usefulness. It is true, that bringing in the word *unnecessarily*, does imply that the usefulness of the highway may have been somewhat impaired, either in the process of the construction or in the maintenance of the railway. But it is quite certain that the section does not mean that the highway should be rendered useless. The section means to preserve the highway for use by public travel, and to permit an adoption of it at the same time by the railroad company for the laying of its track upon it. It permits the latter on the condition that the former shall be continued. It is explicit, that the highway shall not have been unnecessarily impaired in its usefulness. The courts below have found that it has been thus impaired. From this follows one of two things : either the track of the

defendant is unlawfully upon the highway, or it may restore the highway to the state required. It is not the first, for the legislature meant that the railroad company might construct its track upon a highway which the route of the road should touch ; it must then be the last. The duty of restoring imposed, carries with it the power to restore, and in the exercise of that power, all other needful auxiliary powers given by the statute may also be exercised ; and of these is the power to take lands compulsorily when necessary for the purpose of the incorporation of the company. So that the whole scope of the statute shows the legislative intent, that in a case of necessity land may be compulsorily acquired for the purpose of extending the original limits of a highway, or of entirely removing it to another neighboring place. Moreover, it is shown by the papers in the case, that it was by the order and permission of the Supreme Court that the appellant constructed its railroad along and upon this highway. This order was obtained under the statute.

It is further contended by the appellant that, inasmuch as the order of reference was " to hear and determine the whole issues of fact in the cause," the court below, at Special Term, had no power, on the coming in of the report of the referee, to disregard his findings of fact. The argument is this : The Code (§ 272) provides that when the reference is to report the facts, the report shall have the effect of a special verdict. The office of a special verdict is to find and present the facts to the court, so that there shall be left to it nothing but the determination of questions of law. (*Longley* v. *Warner*, 3 N. Y., 327.) If the order of reference in this case was in necessary effect an order to report the facts, then, as the report would have the effect of a special verdict, the court below could have done no more than to determine the questions of law arising thereon. It was not, in terms, an order to report the facts ; it was, in terms, to hear and determine the whole issues of fact in the cause. It restricted the power of the referee to an inquiry into, and a determination of the facts. It was not a reference of the whole issue. No judg-

ment was entered upon it; none could be. (Code, § 272.) The language of the order is not different (save that it is confined to the issues of fact) from that of an order referring the action, "to hear and determine the same, and the issues therein." Yet restricting the referee to a consideration of the issues of fact only, and directing him to determine them, it would be easy to hold it as directing a report of the facts, and as falling within the last clause of section 272 of the Code. The parties, however, have dealt with it differently. It appears from the order made at Special Term, that upon the coming in of the referee's report, the evidence came in with it, and both parties were heard upon the evidence as well as the report, and the learned justice who sat at Special Term, in person, viewed the premises, attended by the attorneys of the parties respectively. All this was without objection, so far as appears, from the defendant. The order cannot now have the effect claimed for it by appellant.

Another point made by the appellant is, that the judgment of the court below, in fact, discontinues a highway, which it says the court has no power to do. It may be conceded that the latter part of this proposition is correct, and yet the point not be tenable; for it still is to be maintained that, in fact, there is a discontinuance of a highway. What the court adjudged and commanded was, that the track of the highway for travel, at a certain place, should, on account of the dangerous character of crossings made there by the appellant, be changed from one side of the railroad track to the other. The distance between the crossings is not great. The highway, as ordered to be made, furnishes communication as effectually as before, between the two points, and for the adjacent lands throughout the whole distance. In fact, it is the same highway, in the sense of a way of passage from one point to another, and for the convenience of all premises between those points. Though the track for travel will not be over the same space, yet it will be for all practical uses the same highway; there is no discontinuance of the highway.

The judgment appealed from should be affirmed.
All concur.
Judgment affirmed.