Boynton, J.
Section 16 of the general incorporation act (1 S. & C. 279), provides, that “ It shall be lawful for such corporation, whenever it may be necessary in the construction of such road to cross any road or stream of water, to divert the same from its present location or bed; but said corporation shall, without unnecessary delay, place such road or stream in such condition as not to impair its former usefulness.”
This provision confers power to divert the road or stream* coupled with the duty imposed to place the same, after diversion, in such condition as not to impair its previous usefulness. The requirement is not to restore to its former place or condition, but to such condition as not to affect, materially, its utility. It is to be left in such condition, how much soever it may be diverted from its former course, that the right .to its public or private enjoyment, where such right exists, shall not be materially disturbed or interfered with. Little Miami R. R. Co. v. The Commissioners of Greene Co., 31 Ohio St. 338. Subject to the performance of this condition, the power or right to divert the same is coextensive with the public necessity which calls for its exercise. The meaning assigned to the language of this section, by counsel for the defendant, confines the right to divert the stream or highway, to a use merely temporary in its character. This we think far too restricted; so much so, that, if adopted, it, to a greater or less extent, would result in defeating the obvious design of the statute. The diversion may be temporary or permanent, as the public needs or necessities require. If intended to be permanent, and a necessity exists therefor, power to appropriate land for a new channel or bed required to enable the company to comply with the duty to place the stream in such condition as not to impair its usefulness, is found in section 10 of the same act. The language of that section is as follows : “ Such corporation is authorized to enter upon any land for the purpose of examining and surveying its rail *120 road line, and may appropriate so much, thereof as may be deemed necessary for its railroad, including necessary side-: tracks, depots and workshops and water-stations, materials for construction, except timber, a right of way over adjacent lands, sufficient to enable such company to construct and repair its road, and a right to conduct water, by aqueducts, and the right of making proper drains.”
Here is clear and express authority to enter upon the land’ of another, and appropriate so much thereof as may be deemed necessary for the railroad; and, if deemed necessary, in the construction of the road, to occupy an existing river bed, or to divert the course of the stream, and this can only be done by supplying a new channel for the river or stream, the appropriation of land upon which to construct the new channel through which to carry the water, is, to all intents and purposes, and within the meaning of this provision' of the statute, an appropriation of the land for the railroad.
In New York; an act of the legislature relating to canals authorized the canal commissioners to enter upon and occupy any lands which might be necessary for the canal improvements. It became necessary, in making such improvements, to occupy a part of a turnpike road; and it was held, that the canal commissioners might appropriate land for a new road, to take the place of that part of the turnpike so taken for canal'purposes. Rogers v. Bradshaw, 20 John, 735.
In delivering the opinion in that case, the Chancellor said: “ If the turnpike road was unavoidably encroached on by the canal, and another road was indispensable at that place, before the canal was commenced, and the land was necessary for the road, it would seem to follow as a clear logical deduction, that the land taken was necessary for the prosecution of the improvements intended by the act.” In People ex rel. v. Railroad Co., 58 N. Y. 152, the New York Court of Appeals, in commenting on a statute re *121 quiring the company, laying its road across or upon- a public highway, to restore the same to such condition as not unnecessarily to impair its usefulness, said : “ The duty of restoring imposed, carries with it the power to restore, and in the exercise of that power, all other needful auxiliary powers given by the statute may also be exercised; and of these is the power to-take lands compulsorily, when necessary for the purpose of the incorporation of the company. So that the whole scope of the statute shows the legislative intent, in a case of necessity, land may be compulsorily acquired for the purpose of extending the original limits of a highway, or of entirely removing it to a neighboring place.” This case goes much further than is necessary in the present case, to sustain the power to condemn land for the new channel.
In view of the two sections above quoted, we think the company is fully authorized, where its road is located across a stream of' water, to appropriate land for a new channel into which to turn the stream, when necessary in the construction of its road. To the extent that riparian rights are appropriated, compensation therefor should be made. This conclusion, however, does not result in the reversal of the judgment of the court below. The company had the right to appropriate only what the public necessity required; the necessity to be determined according to the principles settled in Giesy v. The C. W. & Z. R. R. Co., 4 Ohio St. 308. The petition alleges that the right of way for the railroad, of the width of eighty feet, has been granted to the eompanj7, by Bohm, the owner. Counsel for the plaintiff stated in argument, that at the time the petition was drawn, it was supposed that such right of way had been granted, but that, subsequently, and prior to the trial in the probate court, it was ascertained that such was not the fact, and that, consequently, damages were awarded to the defendant for all the land. If this is so, the petition should have been amended. We must look to the record for the facts, and treat the uneontroverted averments of *122 the petition as true, so far at least as to estop the plaintiff from denying them. Hence, the roadway having been, as we must assume, acquired by purchase, the petition only shows a necessity for the appropriation of land for a new channel for the river, and this it particularly describes. But the company also seék to condemn the land lying in the bend of the river, entirely'outside of the roadway, and remote from the place of the proposed new channel, and state the necessity therefor, as follows :
“That the land owned by said Bohm, southwesterly of said railway, extending to the bed of the stream in the present channel, will thus be cut off from the main tract with which it is connected (which is a tract in all of 40J acres), and will be so impaired in value that petitioner proposes to appropriate the same, together with the land to be occupied for the new channel, and that the whole of the same is, in fact, necessary to said railway company in making and maintaining the proposed channel, and in protecting its said railway.”
The 10th section of the act authorizing the creation of railroad corporations above recited defines the uses for which the land of another may be condemned. So much thereof may be taken as may be deemed necessary for the railroad, including necessary side-tracks, depots, work-shops and water-stations, and materials for construction, except timber, a right of way over adjoining land to enable the company to construct and repair its road, and the right to-conduct water by aqueducts and drains. The land appropriated must be capable of being made subservient to some of the uses here named, and be so intended, or it can not be taken at all. It is not pretended that the land lying in the river bend is necessary or desired for any of the purposes here mentioned, except to furnish material for construction. And if appropriated for such purpose a compliance with the provisions of section 2 of the act of April 28, 1872 (69 Ohio L. 88), prescribing the mode of procedure to effect the appropriation, would seem to require such purpose to be definitely stated. That section requires the petition to contain, *123 among other things, a specific description of each parcel of property, and rights, sought to be appropriated, and the use-to which the same are to be'applied, together with the necessity for such appropriation. Both the necessity for, and the use to which the land lying in the river bend was to be applied, were left, by the petition, in the present case, too-much in doubt. It did not apprise the owner with sufficient certainty whether the fee of the land outside of the roadway was sought, or a lesser interest or estate. Ordinarily,, where land lying without the roadway is appropriated for the sole purpose of supplying materials for construction,, the title to the same, with the right to its possession and enjoyment, subject to the paramount right of the company to enter and remove the material, remains in the original owner.
Hence, to enable the court to determine the necessity of the appropriation, and to secure to the land-owner the just and fair value of the interest taken, when lands are condemned for construction purposes merely, the petition should be so specific in its description of the use intended as to leave no doubt as to the extent of the interest sought to be acquired.

Judgment affirmed.