THE STATE, ALEXANDER BROWN, PROSECUTOR, v. ASSESSORS OF TAXES OF THE CITY OF RAHWAY.

1. A peremptory writ of *mandamus,* issued to enforce a judgment and execution against a municipal corporation, will not be quashed unless it clearly changes or enlarges in a material matter the terms of the alternative writ, or rule absolute by which it was issued.

2. Where the writ was served on the assessors of taxes after the duties of the assessors were completed, by statute, for that year, the writ will not be quashed, but the time for return extended.

3. The tax to be levied for payment of a judgment, in addition to the regular taxes, must be assessed and collected at the same time and in

the same manner with the general assessment of taxes, and not by a special and distinct assessment at another time.

On motion to quash a peremptory writ of *mandamus.*

Argued at November Term, 1888, before Justices SCUDDER and REED.

For the prosecutor, *William P. Wilson.*

For the defendants, *Garret Berry.*

The opinion of the court was delivered by

SCUDDER, J. The prosecutor recovered a judgment in this court, April 28th, 1879, against the mayor and common council of the city of Rahway, for $3,770.70. On March 29th, 1887, an execution was issued on this judgment to the sheriff of Union county, under the supplement to "An act concerning executions," approved March 22d, 1878. *Rev. Sup., p.* 290. There being no property of the city whereon to levy, a copy of the writ was served on the treasurer, collector and receiver of taxes, and the five assessors of taxes, on June 6th, 1887. Nothing having been done by these city officers in performance of the duty to assess, levy, collect and pay over the amount due on the execution to the sheriff, a peremptory writ of *mandamus* was applied for and issued, tested July 19th, 1888, returnable November Term, 1888. At that term a motion was made to quash the writ, for several reasons, before any return was made. Such motion must be examined with the greatest care, to learn whether it is an attempt to evade the positive command of the writ and to hinder and postpone the creditor in the recovery of his debt against the city. It is certain that there has been no alacrity shown in the payment of this judgment. The statute is full and complete in the remedy afforded for the collection of such claims, and its authority has been established in *Mundy* v. *Rahway,* 14 *Vroom* 338; *S. C.,* 15 *Id.* 395. The power

given is ample, the duty plain and the command to act positive and final. Where these are found, and the process has been regularly served, the only permissible return to the peremptory writ of *mandamus* is one of obedience. *Freeholders* v. *Penna. R. R. Co.*, 12 *Vroom* 250; *Regina* v. *Poole*, 1 *Q. B.* 616; *High Ex. Rem.*, § 549; *Shortt Inf.* *423.

The court may, however, quash the writ where it is in excess of the alternative writ, or the rule absolute for cause shown, under which it has been issued. It is also said that it may be quashed if the court is convinced, on any ground, that it ought not to have issued; as if it appear that the defendant has no power to do that which the *mandamus* requires him to do. *Shortt Inf.* *423.

*In Matter of Long*, 14 *L. J.*, 2 *Q. B.*, 146, a rule *nisi* was granted, because, as the court said, they were unwilling to shut out inquiry, but on the return of the rule it appeared that the keeper of the queen's prison, to whom the peremptory writ of *mandamus* was directed, had no power, by statute, to pay an allowance to a prisoner in his custody; whereupon the rule to quash was made absolute.

But it is obvious that the rule to quash should be rarely used, for nearly all permissible objections to the enforcement of the peremptory writ are more properly examinable before this final writ has been allowed. They should be anticipated and presented when they may be remedied, or the proceedings stopped. That this has been the usual practice appears in many cases. *Roll* v. *Perrine*, 5 *Vroom* 254; *Silverthorn* v. *Warren R. R. Co.*, 4 *Id.* 173; *State* v. *Lewis*, 6 *Id.* 377; *Freeholders of Ocean* v. *Lacey*, 13 *Id.* 536; *Shackelton* v. *Guttenberg*, 10 *Id.* 660; *State* v. *Jacobus*, 2 *Dutcher* 135; *King* v. *St. Pancras*, 3 *Ad. & El.* 535; *Rex* v. *Commissioners of Sewers*, 2 *Str.* 763.

The court will not grant a *mandamus* unless convinced that it will be practically effective to secure the object to which it is directed. *Shortt Inf.* *246. The whole case should, therefore, be fully shown on the rule to show cause, or on the alternative *mandamus*, so that only objections which are

strictly appropriate, to avoid final process after it is issued, may remain to be presented on a motion to quash the peremptory writ.

The reasons urged in this case are, first, that the form of the peremptory writ varies from the rule absolute, which requires the assessors to proceed to assess and levy, in addition to the regular taxes of the said corporation for the year 1888, the amount of the judgment and execution in favor of the relator, without stating the time and manner of making the assessment. The peremptory writ commands these respondents to proceed to assess and levy the amount of the judgment, in addition to the regular taxes of the said corporation for the current year, according to the duty imposed on them by the act of March 27th, 1878, in manner and form as therein provided, according to the true intent and meaning thereof. As there is no other authority by law to assess and collect this judgment by taxation than the statute referred to, the writ adds nothing substantial to the rule absolute, but only incorporates the general statute, in terms, which by implication are parts of the rule. The peremptory writ is in the nature of an execution (*Rader* v. *Township of Union,* 14 *Vroom* 518), and the rule for execution is for such process, and such only, as the law will give. It is limited necessarily to this one statute under which the assessment can legally be made. The writ does not, therefore, change or enlarge in any material matter the terms of the absolute rule by which it was issued.

The next reason is, that the assessors had completed their duties in making the assessment for that year before the writ was issued and served upon them; and no other time being mentioned in the act for performance, compliance with the command was impossible. If this be admitted to be true, the relator's counsel contends that the law authorizes a special tax for this purpose to be assessed and levied at any time during the year. But the law on this point is explicit that " this tax shall be assessed and collected at the same time and in the same manner and under the same conditions, restrictions

and regulations as taxes for other purposes are required to be assessed and collected in said town," &c. *Rev. Sup.*, *p.* 290. This clause limits the time of assessment and collection to the period prescribed by law for the one general assessment for taxes in Rahway, and prevents a separate and special assessment at any other time for the payment of this judgment.

The writ was served on the assessors July 21st, 1888. On May 25th, 1888, a notice was published by the board of city assessors that they had completed the assessment list of real and personal property liable to taxation in said city, and that the assessments would be open for inspection, examination and correction at the office of said board, from June 14th, 1888, to June 26th, 1888. It also appears by the affidavit of Nathan V. Compton, one of the assessors, and secretary of the board of assessors, " that the duties of the assessors of the city of Rahway were completed on the sixteenth day of July, 1888, that being the day for the year 1888 fixed by the statute for completing the same, being the third Monday of July, the date fixed for the meeting of the county board of assessors, at which date it is the duty of the city board to have their duplicates made up ; and that it was impossible for the assessors to obey the writ in the terms that they were by it commanded."

By section 51 of the charter of Rahway (*Pamph. L.* 1865, *p.* 520), the assessors of the several wards shall meet annually, on the last Tuesday in June in each year, to review the several assessments made by the ward assessors ; and by section 52, they shall meet annually, on the second Monday in July, instead of the first Monday in September, to perform the duties required of them by law ; provided, that the assessors of the several wards shall cause the corrected roll of each ward of the city to be delivered to the receiver of taxes for the said city on or before the 20th day of July in each year. By section 54, the receiver of taxes, on receiving the said assessment rolls and warrants, shall proceed to collect the said taxes from the several persons assessed in the assessment rolls in the manner thereafter mentioned. We are also re-

ferred to a clause in section 5 of the charter of the city of Elizabeth (*Pamph. L.* 1869, *p.* 1257), which says that the annual meeting of the assessors of the county shall thereafter be held on the third Monday in July in each year. It appears by the affidavit above referred to that this has been the course pursued in the assessment and collection of taxes in Rahway in 1888, and such, it is said, has been the time and method followed in former years under the charter.

In determining the question of the obedience of the defendants to the peremptory writ it is not necessary to construe these sections for the purpose of expressing any opinion on their legality with reference to subsequent general legislation. It is sufficient, for the present purpose, that the assessors of the city acted on them in the usual course of assessing taxes for that year, in the belief that they were operative, and without any attempt to evade the execution of the command of the writ. Before the writ was served the final step had been taken on the assessment for the year 1888. But this will not induce the court to quash the writ, and subject the relator to the delay, expense and embarrassment of obtaining another writ for the collection of his judgment.

The power of the court to amend the writ is questioned, and, as the time has passed for a return, it is claimed that another writ must first be issued before the relator can proceed to enforce his judgment under the statute.

There is some color for this position in the fact that the old law held with strictness to the authority of this writ as a prerogative writ, and that no amendments would be allowed in it. But the statute of 9 *Anne, c.* 20, § 7, extending the statute of *jeofails* in England " to all writs of *mandamus* and informations in the nature of *quo warranto,* and all the proceedings thereon, for any of the matters therein mentioned," and our statutes and practice allowing amendments in proceedings in courts have all tended to relax the strictness of the common law rule. It is now said that the rule in modern times has been changed, and the better view is that, within reasonable and proper limits, by amendment of the alternative writ or

otherwise, the peremptory writ may be moulded so as to effectuate justice. 2 *Dill. Mun. Corp.*, § 879; *Tapp.* 334; *People* v. *Dutchess R. R. Co.*, 58 *N. Y.* 152; *Commonwealth* v. *Pittsburg*, 34 *Penna. St.* 496, 515; *Rex* v. *Newburg*, 1 *Q. B.* 759.

In some cases time has been given to make return to writs of alternative *mandamus* and a further day allowed for that purpose. *People* v. *Judges and Supervisors of Ulster*, 1 *Johns.* 64; *People* v. *Judges of West Chester*, 4 *Cow.* 73. We think it would be proper in this case, to effectuate justice, to extend the time for the return to this writ until next June Term.

The objection that the amount of interest on the judgment and of the sheriff's fees on execution are not given in the writ is trivial. These may be easily computed and ascertained by the officers making the assessment.

The motion to quash is denied, with costs.

Like rule will be made in two other motions argued at the same time.