The situation of this executor is stated in the quotation above made. He resists the imposition of a tax on property of his testator, alleging the ground to be that that property is not taxable under the transfer tax law because his testator was a nonresident of the state. Now, before he is subjected to an inquiry as to these particular assets of that estate, he should be brought within the meaning and intent of the law by having it established that the testator was a resident, and not a nonresident. It will not do to say that the matter of residence and the question of liability of particular property to taxation may be considered at the same time. That simply begs the whole question. The subject of liability to taxation as to the particular stocks here involved depends upon residence. If the residence were not in the state of New York, there is no liability to taxation on those stocks in foreign corporations. It is an inversion of the whole proceeding to say that one must answer before he is before the court in a position which requires him to answer.

I think the decision of the surrogate was wrong, confining it to the one point raised on this appeal, and that the order, so far as appealed from, should be reversed, with costs to the appellant, and that the executor should not be compelled to answer with reference to stocks in the foreign corporations until the question has been determined by the surrogate as to the residence of David Wolfe Bishop.

Order reversed, with costs to appellant. All concur, except O'BRIEN, J., who dissents.

---

(81 App. Div. 335.)

PEOPLE ex rel. TOWN OF COLESVILLE v. DELAWARE & H. CO.

(Supreme Court, Appellate Division, Third Department. March 11, 1903.)

1. STIPULATION—CONSTRUCTION.
     A stipulation in a suit by a town to enjoin a railroad company from constructing an undercrossing at a highway intersection provided that any crossing which might be put in by the railroad company at the point in question, except an undercrossing, was put in only temporarily, to permit the construction of said undercrossing and that such temporary crossing was not to be used as evidence for or against either party. *Held*, that the stipulation was not an agreement by the railroad company to put in an undercrossing.

2. RAILROAD CROSSINGS—POWERS OF RAILROAD COMMISSIONERS—INJUNCTION.
     Under Grade Crossing Law, §§ 60–69, giving the board of railroad commissioners power in all cases mentioned therein in determining how highways should be taken across the tracks of steam railroads, the power to decide what particular variety of a crossing shall be constructed at any point where a railway intersects a highway is vested exclusively in the board of railroad commissioners, and the court has no authority to decide such question in an injunction proceeding.

3. SAME—JURISDICTION.
     Laws 1897, c. 754, gave railways the right to determine how a highway crossing should be constructed. Grade Crossing Law, §§ 60–69, vested this power in the board of railroad commissioners in all cases mentioned in the act, and section 3 repealed all acts and parts of acts inconsistent therewith. *Held*, that courts are without power to provide the manner in which a highway crossing shall be constructed, since, if the construction of the crossing is not within the jurisdiction of railroad commissioners under the grade crossing act, it is a matter to be determined by the railroad itself under the former law.

Appeal from Broome County Court.

Mandamus by the People, on relation of the town of Colesville, against the Delaware & Hudson Company, to compel respondent to construct an undercrossing at the point where its railroad crossed a highway. From an order awarding the writ, but failing to determine that relator was entitled to an order requiring the defendant to put in an undercrossing, relator appeals. Affirmed.

Argued before PARKER, P. J.; and SMITH, CHASE, CHESTER, and LYON, JJ.

Wales & Riley, for appellant.

Lewis E. Carr, for respondent.

CHESTER, J. The order entered herein was made after a trial of the issue raised by a return to an alternative writ of mandamus. The trial resulted in the granting of a peremptory writ of mandamus against the defendant, requiring it, in the language of the statute (Railroad Law, § 11; Laws 1890, c. 565), forthwith to restore the highway at Lockwood's crossing of the defendant's railroad in the town of Colesville "to its former state, or to such state as not to have unnecessarily impaired its usefulness," and requiring the defendant to pay costs to the relator. The relator appeals because the writ does not command the method of the restoration, and insists that it should require the defendant to restore the crossing by putting in an undercrossing instead of a crossing at grade.

It appears that in the year 1900 the defendant was engaged in making certain improvements on that part of its road which passes through the township of the relator, known as the "Ninevah Branch." That branch had been constructed upwards of 20 years before, during all of which time there had been a crossing at grade at the point in question. The improvements at that point involved the raising of the grade of the railroad track 6½ feet. Before the raise in grade was made, the town of Colesville commenced an action in the Supreme Court against the defendant to restrain it from raising its grade at the point in question unless it should construct an undercrossing for the highway, and a temporary injunction to that effect was procured by the town against the defendant and served. Thereafter the defendant petitioned the board of railroad commissioners of the state for the abolition of this grade crossing under section 62 of the railroad law, and the substitution of an undercrossing in its place. If this had been granted, 50 per centum of the expense of the undercrossing, under the law (section 65), would have fallen upon the railroad company, 25 per centum upon the state, and 25 per centum upon the town. The application was opposed by the town, and after a hearing the board of railroad commissioners made an order denying it. While that matter was pending, and the company was restrained by the injunction referred to, the attorneys for the respective parties entered into a stipulation entitled in the injunction suit, which is as follows:

"Stipulated by and between the parties to the above-entitled action that any crossing which may be put in by the above defendant at or near Lockwood's crossing in the above matter (except an undercrossing at the present highway

crossing) is put in by defendant only temporarily, to permit the construction of said undercrossing, and such temporary crossing is not to be used as evidence for or against either party hereto in this action or any other proceeding, and the injunction herein is hereby modified accordingly, and no claim for damages on the injunction bond herein shall be in any event put in by defendant."

It appears that this stipulation was regarded by the parties as a modification of the injunction so as to permit the railroad company to go on with the work of changing the grade. The grade was thereupon raised 6½ feet, and a temporary crossing at grade was made, which has since been used. After the denial of the petition of the defendant to the board of railroad commissioners, this proceeding was commenced, and it has resulted in the final order, a portion of which is the subject of this appeal.

Much of the argument of the appellant consisted of an effort to show that the stipulation above mentioned was in effect a contract on the part of the defendant to put in an undercrossing, which contract can be enforced by the writ of mandamus. There is no affirmative agreement in the stipulation on the part of the defendant to put in an undercrossing. The agreement it made was that any crossing which may be put in by it, except an undercrossing, was to be regarded as a temporary crossing. The fair purport of the agreement is to protect the town against the possible claim of the defendant that the temporary crossing which the defendant proposed to put in should be regarded by it as a satisfaction of its obligation under the law to restore the highway to its former state, or to such a state as not unnecessarily to have impaired its usefulness, as well as against any claim under the injunction bond. To that extent the town is protected by the stipulation. After the stipulation was made, the town successfully opposed an undercrossing before the railroad commissioners. No doubt, its opposition there was made in an effort, not to defeat an undercrossing, but to protect the town from paying a portion of the expense of making such a crossing. But whether this was so or not, the stipulation cannot be effective as a contract of the defendant to build an undercrossing without reading something into it that is not there. While the court will enforce stipulations made by parties to a litigation, it will not undertake to make contracts for them. So I think this appeal is to be determined the same as though the stipulation had not been made.

Before the passage of what is known as the "Grade Crossing Law" (chapter 754, Laws 1897), the right to determine how a highway should be taken across the tracks of a steam railroad—whether at grade or otherwise—rested primarily with the railroad company, under the old statute (Laws 1850, p. 222, c. 140, § 24), which authorized it to carry the highway over or under its tracks "as may be found most expedient." People v. N. Y. C. & H. R. R. Co., 74 N. Y. 302. If, however, a railroad company made an attempt at the restoration of a crossing, and such attempt had not been an effectual compliance with the statutory obligation to restore, resort could then be had to the court for a mandamus; and the court would have in such case to point out in a writ in what respect the corporation had failed in its duty, and would direct therein particularly what must be done by it

in order to discharge its duty under the law. People ex rel. Green v. D. & C. R. Co., 58 N. Y. 152. The grade crossing law, which is now found in the railroad law, in sections 60 to 69 thereof, inclusive, wrought an entire change in the law, and the board of railroad commissioners were thereby given exclusive power in all the cases mentioned therein in determining how highways should be taken across the tracks of steam railroads. The Court of Appeals, in an opinion written by Chief Judge Parker, in discussing this change, in the recent case of People v. N. Y. C. & H. R. Co., 158 N. Y. 413, 53 N. E. 167, says:

"The latter act radically altered the procedure by which highways are to be carried across railroad tracks—a change of procedure made necessary by the radical change in the public policy of the state, looking towards the ultimate abolition of the crossing of highways at grade by the tracks of steam railroads. It provides a complete scheme as to crossings, whether the tracks of the railroad cross streets already laid out or streets newly laid out, opened or extended across the tracks of a railroad already in existence, or the change in the grade of an existing crossing, and commits the regulation of the manner of making and constructing such crossing to the railroad commissioners, who are given authority to determine whether a given street, avenue, or highway shall pass over or under a railroad, or at grade. * * * The act of 1853 was repealed by that of 1897, and therefore since the 1st day of July of that year the procedure provided by the latter act must be resorted to in all attempts to take a street across the tracks of a steam railroad—a procedure that requires, in the first instance, a determination by the railroad commissioners whether the street shall pass under or over the tracks of such a corporation, or at grade."

It is a settled rule of construction that when rights are conferred by statute, and specific remedies provided therein for their protection, such remedies are exclusive and must be pursued. Matter of N. Y., L. E. & W. R. Co., 110 N. Y. 379, 18 N. E. 120. It would appear clear, therefore, that, if the terms of the grade crossing law are broad enough to cover the change in the existing crossing at the point in question, the board of railroad commissioners are clothed with exclusive jurisdiction to hear and determine the matter in the first instance. The argument of the appellant, however, is that the grade crossing law does not cover a case such as is presented by the facts here, for the reason that the change in the crossing was made necessary by the change in the grade of the railroad, instead of by a change in the grade of the street, and that it is only in a case of the change of the grade of a street, where the grade of a railroad remains unchanged, that the statute applies. It should be borne in mind that the repealing clause contained in the grade crossing law was of all acts and parts of acts inconsistent with the new law. Laws 1897, c. 754, § 3. It is not necessary for us, therefore, to determine whether or not the appellant is right in this contention, for the reason that, if it is right, then the old statute would apply, and the railroad company would have a right, in the first instance, to elect whether it would carry the highway across its tracks at grade or otherwise. If it is wrong, and the grade crossing law is broad enough to cover the case in question, then the board of railroad commissioners must determine the matter in the first instance as to the method of crossing. In either event the court cannot now direct the manner of restoration.

The defendant insists that it can restore the highway at the point in question in such a way as not unnecessarily to have impaired its usefulness by the construction of a crossing at grade, and that such a crossing can be made by it with a less percentage of grade than existed upon the old crossing, and the court has found that it was not convinced by the evidence that the highway can be restored to its former usefulness only by the construction of an undercrossing. It appears that this negative finding is clearly supported by the evidence upon that question, and should not be disturbed on appeal, and especially not where the defendant is willing to take its chances of a restoration of the crossing at grade, when a failure in restoration might subject it to a new resort to the courts on the part of the town to compel it to fulfill its statutory obligation. I think the appellant has got all it is entitled to have at present under the order appealed from, and that the order and the mandamus issued pursuant to it should stand without modification; the order not having been appealed from by the railroad company.

The order appealed from should be affirmed, with costs of appeal to the respondent. All concur, except LYON, J., not voting.