# COUNTY OF ANDROSCOGGIN.

### ISAAC C. WELLCOME *versus* INHABITANTS OF LEEDS.

The statute of 1853, c. 41, § 3, relating to the construction of railroads across highways, is not retroactive.

The provision in the charter of the Androscoggin railroad company, that "the railroad shall be so constructed as not to obstruct the safe and convenient use of the highway," is a continuing obligation, requiring the company to keep the railroad so constructed at all times.

But a town is not thereby absolved from its obligations to see that the highways therein are not rendered unsafe by the crossing of a railroad.

If the highway at a railroad crossing is defective and the town has notice of it, it is no defence that the particular defect was one which the railroad company ought to have repaired.

EXCEPTIONS from the ruling at *Nisi Prius* of GOODE-NOW, J.

This was an action to recover of the defendant town damages sustained by the plaintiff, occasioned by defects in a highway in said town at the crossing of the highway by the Androscoggin railroad.

The plaintiff offered to prove the existence of the highway, and that the inhabitants of Leeds were bound to keep the same in repair, &c., that there was existing in said highway at the crossing aforesaid, in said highway, and in the bed of said railroad, at the time of the injury a dangerous defect by reason of a want of planking in said highway and railroad bed at said crossing, and the snow upon said highway at the sides of said railroad, of which defect the inhabitants of Leeds had notice, and that he, while travelling in his pung drawn by one horse on the road aforesaid, with a load consisting of his trunk, on the way aforesaid, near the Dead River Crossing, in the use of ordinary care, was by

reason of said defect, and that alone, in consequence of his pung falling into said cavity and against the rail of said railroad, thrown violently upon the ground, permanently injuring him.

The plaintiff further offered to show that the railroad crossed the highway at a very oblique angle, almost parallel to the road, so that, it being in the winter time, the plow of the engine had thrown mounds of snow almost a foot high on each side of the railroad, and on the highway; that on the southerly side of the road a plank had been removed, leaving a cavity about twelve feet long and five inches deep; that when the plaintiff's pung, travelling from the north to the south, went over the northerly mound, it slewed on to said crossing so that the beak of the right runner struck the southerly rail of the railroad, at the same time the angle being so oblique the whole runner fell into the cavity, that he then rose to get out and relieve the runner, when the horse quietly and easily starting caused the sleigh to tip and throw out the plaintiff, with the trunk upon his back, thereby greatly injuring him.

Plaintiff also offered to prove that, in the records of the commissioners of Kennebec county, there was no record that the conditions and manner of crossing the highway by the railroad had ever been determined by the commissioners of Kennebec county, or of the county of Androscoggin.

The presiding Judge ruled the evidence insufficient to sustain the action. The plaintiff excepted.

*Fessenden & Frye*, for the plaintiff.

*Record & Luce*, for the defendants.

The opinion of the Court was drawn up by

DAVIS, J.—The plaintiff offered to prove that the town was bound to keep the highway in repair upon which he was travelling; that there was a dangerous defect in said highway, of which the town had notice, at the crossing of the Androscoggin railroad, "by reason of a want of plank-

ing in said highway and railroad bed at said crossing, and the snow upon said highway at the sides of said railroad;" that he was injured by reason of said defect; and that he was at the time in the exercise of ordinary care. The presiding Judge ruled that the evidence offered was insufficient to maintain the action.

The plaintiff then offered to prove, further, that neither the county commissioners of Kennebec county, in which the town was situated when the charter was granted to the railroad company, nor the commissioners of Androscoggin county, incorporated afterwards, had ever determined the conditions and manner of crossing the highway by said railroad. But the evidence was excluded.

The statute of 1853, c. 41, § 3, required that, before the "location" of any railroad across any highway, the conditions and manner of crossing should be determined by the county commissioners. In another clause the same determination was required before a railroad should "cross" any street of a city. As there could be no such determination before the *place* for crossing had been fixed by the location made by the survey, it is obvious that the words refer to the actual placing of the railroad across the highway by constructing it.

In cases to which the statute applies, the company have no right to *construct* their railroad across a highway, until the conditions and manner of crossing have been determined. If they attempt it, they may be enjoined, or indicted. *Commonwealth* v. *N. & Lowell Railroad Co.*, 2 Gray, 54; *Com.* v. *V. & Mass. Railroad Co.*, 4 Gray, 22. No such determination can be made without notice to the selectmen. And, if the company undertake to proceed without it, it is the duty of the selectmen to prevent or remove their work, as a public nuisance. If they neglect to do so, the town is liable to indictment, and is also liable for injuries to travellers caused by any defect in the highway.

But the statute of 1853 was not retroactive in its terms. It might have been wise, perhaps, to require the manner

and conditions of *maintaining the crossings already made* to be determined. The Legislature did not do it. The statute applied to those railroads, only, not constructed before its enactment. The Androscoggin Railroad Co. was chartered in 1848. The plaintiff offered no evidence that it was not constructed through the town of Leeds before the statute of 1853. If it was incumbent on him to prove that the railroad company ought to have had the conditions and manner of crossing determined, and that they neglected to do so, the evidence offered by him was insufficient for that purpose. If it was not necessary for him to prove such duty, and neglect, the evidence excluded was immaterial.

Was the other evidence offered by the plaintiff sufficient to maintain the action?

The charter of the company requires that "the railroad shall be so constructed as not to obstruct the safe and convenient use of the highway."

This is not limited to the original construction. It is a continuing obligation, requiring the company to keep the railroads so constructed, at all times.

It is the duty of towns to keep the highways in good repair. The language of the statute was changed by the revision of 1857; but the sense is the same. And, though the charter requires the railroad company to construct the crossing in such a manner that it shall not render the highway unsafe, it does not absolve towns from their obligation to see that they are so constructed. For any negligence in this respect they are liable, the same as if they alone were under obligation to keep the crossings in repair. *State* v. *Gorham*, 37 Maine, 451; *Currier* v. *Lowell*, 16 Pick., 170.

The risks of public travel in this State are greatly increased by railroad crossings, especially in the winter season. The bed of the railroad remains the same, while the highway on either side is elevated by the accumulating snow. The inhabitants of towns live in the vicinity of such crossings, and have notice of their condition. Public safety requires that the duty of keeping them in good repair should

Wellcome *v.* Inhabitants of Leeds.

be imposed primarily upon the towns. Notice to them is easily given, and proved ; and the remedy of injured parties against them is simple, and certain. The reënactment of the provisions of the statute of 1841, after the judicial construction given thereto in the case of *State* v. *Gorham*, was a legislative adoption of that construction.

The additional burden, thus placed upon the towns, is a matter for the consideration, not of the Court, but of the Legislature. The general duty of opening and repairing highways is one of arbitrary statute regulation. Public necessity and safety require it ; and they require this additional labor and care in regard to railroad crossings.

But the burden is not a serious one. If the railroad companies fail to do their duty, the towns may compel them to do it ; or they may make the repairs, and recover back the money expended. If any company should persist in neglect, and subject the towns to continued trouble and vexation, it would do so at the risk of losing its charter. And, if any further remedies are necessary, it is for the Legislature to provide them.

If the highway at the railroad crossing in Leeds was defective, and the town had notice of it, it is no defence that the particular defect was one which the railroad company ought to have repaired. The facts offered to be proved were sufficient to maintain the action.

*The exceptions are sustained.*

APPLETON, C. J., RICE, CUTTING, KENT and WALTON, JJ., concurred.