The Cairo and Vincennes Railroad Company

*v.*

The People of the State of Illinois.

1. Streets—*municipal corporation has full control.* Under the statute, cities are given exclusive control of all streets and alleys within their corporate limits. The fee of the streets is in the corporation, and its dominion over them is as absolute as that of the owner of other lands.

2. Same—*control of city council over railroad tracks in streets.* Under the 27th clause of sec. 62 of art. 5 of the act of 1872, to incorporate cities and villages, the whole subject of the control of railroads in streets is committed to the local government of such cities and villages. They are empowered to enforce police regulations as to the running of trains to secure protection to persons and property, and to compel such railroad companies to raise or lower their tracks so as to conform to any grade which may at any time be established, and when such tracks run lengthwise of any street, alley or highway, to keep the same on a level with the street surface.

3. Chancery—*jurisdiction—control of railroad track in streets.* A court of chancery will not assume jurisdiction to control the use of a street in an incorporated city by a railroad company, or the manner in which the track is laid, or in which the business of the road is operated thereon, for the reason that this power is conferred by law upon the corporate authorities of the city, and the courts can not supervise the exercise of such power at the suit of the people.

4. If an individual is injuriously affected by the exercise of unwarrantable powers by a city council destructive of its property or health, he may invoke the aid of a court of chancery for redress. But this is no concern of the general public.

APPEAL from the Circuit Court of Alexander county; the Hon. DAVID J. BAKER, Judge, presiding.

This was a bill in chancery, exhibited in the name of the People of the State of Illinois against the Cairo and Vincennes Railroad Company, for an injunction to restrain that company from operating its railroad on certain streets in the city of Cairo, in violation of the ordinances of the city under which it obtained leave to construct and operate its road within the limits of the city.

By way of recitals in the bill it is shown the city of Cairo is regularly laid out and platted into lots, blocks and streets, named and numbered, and that the city was incorporated under an act of the General Assembly approved February, 1867, and in 1873 it became incorporated under the general law in relation to cities and villages. It is alleged, that on the 16th day of April, 1869, the city council, under the power conferred by its charter and amendments thereto, passed an ordinance, by which the city granted to the Cairo and Vincennes Railroad Company the " right of way over and along Commercial avenue and St. Charles street and across Levee street," with the privilege to lay down and operate a single or double line of rails and no more, on the streets named, but upon conditions to be observed by the railroad company as set forth in the ordinance, as to the grade of the streets and as to the manner of laying the track so as to secure the free use of the public streets to the public; and upon the further condition that such regulations may be imposed, and enforced by appropriate penalties, by the city council upon the company, as to the use of the track in such streets as will restrict the speed of the cars and prevent the storage of cars and other permanent obstructions on the track as will protect the public in the safe and convenient use of the street.

In January, 1873, long after the passage of the ordinance, the railroad company constructed its railroad tracks, switches and turn-outs on Commercial avenue from Forty-second to Second street, which, it is charged, was in plain and palpable violation of the ordinance from Twentieth to Second street in constructing the tracks on the natural surface without first bringing the street to grade, as was its duty under the ordinance, thereby rendering the street dangerous to the public. It is also charged, the company, instead of using the tracks so laid as a mere right of way to and from the depot and switches, as contemplated in the passage of the ordinance, in defiance of public right are using such street as a place for loading and

unloading cars, for making up trains and switching cars, and for standing cars thereon after being loaded.

On the 17th day of February, 1873, the city council passed another ordinance, in which it was recited that whereas a "literal compliance" with the ordinance of 1869 was "found to be impracticable;" and then provided, the laying of the rails on ties of the ordinary thickness, to be placed on the surface of the ground as then existing below Twentieth street, except at street intersections, where the ties shall be lowered so as to reduce the level of the rails to the grade of the street, shall be deemed and considered by the city council as a virtual compliance with the conditions of the former ordinance, so far as laying the rails below Twentieth street is concerned ; provided, however, the company would plank and ballast the track in the manner prescribed, and so keep the same "as, in the opinion of the committee on streets for the time being, will afford safe and easy crossing over said track and permit the use by the public without unreasonable interruption."

Allegations of the bill are, that the laying of the track by the railroad company is in violation of the provisions of both ordinances, but how or in what manner it contravenes any provision of the last ordinance is not stated. The ordinance of February 17, 1873, was adopted after the city of Cairo became incorporated under the general incorporation act in regard to cities and villages, and it is charged it was in violation of section 9 of article 6 of that act, because it was not adopted on the petition of owners of lands and lots fronting on the street.

The relief sought is that the railroad company and its employees may be enjoined from using Commercial avenue for loading and unloading cars, from making up trains thereon, and from using the track in any other way and for any other purpose than the transit of cars and trains over such tracks to and from their depot and grounds, and from switching cars and trains on the avenue, and from making any use of the

track in any way to hinder the public in the proper enjoyment of the avenue.

On the final hearing, among other things the court found that the railroad company, under the ordinances of the city, had the right and privilege to lay down a single or double line of rails on Commercial avenue, and no more, to the depot and grounds of the company wherever located, subject to such reasonable rules and regulations as the city has heretofore or may hereafter impose.

The court then decreed that defendant be perpetually enjoined from making up trains and switching cars on Commercial avenue except as in the decree provided; and decrees further, that the tracks or lines of rails of defendant on Commercial avenue between Second and Twentieth streets, as now laid, constructed and operated, are not laid, constructed or operated as is now required by ordinance of the city, but in open violation, and are public nuisances, and orders and decrees that defendant shall lay, construct and repair such track or tracks or lines of rails so as to comply and be in accordance with the provisions of sections 7 and 8 of chapter 15 of an ordinance of the city, entitled "An ordinance revising and consolidating the general ordinances of the city of Cairo;" and in case of the failure of defendant to comply with the decree of the court as to the construction of its tracks on Commercial avenue between Second and Twentieth streets by a day named, the sheriff of the county should remove and abate such nuisance at the costs of defendant. All switches, switch gates, side-tracks and turn-outs of defendant on this avenue between Second street and the northerly line of Twentieth street, as now laid and used, except such as are necessary in order to get from such avenue to the depot grounds, are declared to be nuisances, and defendant is ordered to abate them by a day named, and in default thereof the sheriff of the county is to abate the same. And further decrees, that all switches and turn-outs that may be constructed and used by defendant on that portion of Commercial avenue in order to get to and

within its depot grounds, must be constructed and used as a mere means of transit for trains and locomotives, so as not to interfere with the ordinary use of that portion of the avenue by the public as a highway.

The case comes to this court on the appeal of defendant, but complainants have availed of their privilege under the statute, and assigned cross-errors.

Mr. Samuel P. Wheeler, for the appellant.

Messrs. Linegar & Lansden, for the appellees.

Mr. Justice Scott delivered the opinion of the Court:

Numerous questions have been raised on this record, but in the view taken it will not be necessary to discuss all of them.

It is not perceived how a court of chancery can obtain jurisdiction to decree any relief on the facts disclosed by this record. Under our statute cities are given exclusive control of all streets and alleys within the corporate limits. The fee of the streets is in the corporation, and the dominion over them is as absolute as that of the owner of other lands.

Under enabling ordinances the railroad company constructed its tracks in certain streets without objection from the corporate authorities of the city, so far as this record discloses. By the 27th clause of section 62, article 5, of the act of 1872, to incorporate cities and villages, the whole subject of the control of railroads in streets is committed to the local government of such cities and villages. Power is given to enforce police regulations as to the running of trains to secure protection to persons and property, and to compel such railroad companies to raise or lower their tracks so as to conform to any grade which may at any time be established, and when such tracks run lengthwise of any street, alley or highway, to keep the tracks on a level with the street surface, so that such tracks may be crossed at any place on such streets. Besides this general grant of power from the General Assembly, the city, in this case, reserved to itself in express terms the right

it no doubt would have had without any reservation, to impose regulations, and enforce the same by appropriate penalties as to the use of the tracks in such manner as will restrict the speed of cars thereon to a safe and reasonable rate, and prevent the storage of cars and maintenance of other permanent obstructions upon such tracks, and as will generally protect the public in the safe and convenient use of the street.

These are corporate functions which city councils are fully authorized to exercise within the limits of municipalities, and how can a court of chancery assume jurisdiction to perform them? What the court has undertaken to do by its decree in this case, is simply what the General Assembly has authorized the corporate authorities of the city to do, viz: to control the operation of railways in the streets of the city. It has declared the tracks laid by defendant in Commercial avenue are not laid in conformity with the ordinances of the city granting the privilege, and has required defendant to re-lay its railroad track in accordance with the provisions of another general ordinance enacted since its tracks were laid under the license given by former ordinances.

Clearly these are all matters within the jurisdiction of the city council, and whence is the authority of a court of chancery to perform them to the exclusion of the control of the corporate authorities of the city? If a court of chancery takes jurisdiction to control the general management of railways in streets of cities, fixing grades for the tracks, regulating speed of trains, and other matters,—it is plain the corporate authorities must cease to act, or there would be a conflict of authority. Such powers can be referred to no general head of equity jurisdiction. Under the ordinance of 1873 the ties and track of defendant's railroad are to be so laid and maintained as, in the opinion of the committee on streets for the time being, will afford safe and easy crossing over such tracks, and permit the use of the same by the public without unreasonable interruption. What will constitute proper and reasonable grades for streets so as to render them

safe and convenient for the use of the public, are matters within the exclusive determination of the city council; and certainly a court of chancery has no means of ascertaining when the track of defendant's road in the street in question is so constructed as will, in the opinion of the committee on streets and alleys, be safe and convenient for the use of the public. Obviously it is with the city council to determine whether the track of defendant's railroad has been laid in conformity with the provisions of the ordinances previously enacted; and if the corporate authorities, to whom such matters are committed by general law, are satisfied with the manner in which the track is laid, we are not aware of any power that exists in the courts to supervise their discretion in such affairs.

Individuals injuriously affected by the exercise of unwarrantable powers by the city council destructive of their property or health, might invoke the aid of a court of chancery for redress. But that is not the case here. Neither the corporation nor individual citizens are complaining that defendant has not complied with the ordinances granting the privilege to construct and operate its railroad in certain streets of the city; and we are not advised it is any concern of the public at large that may be relieved against in a suit by the people in a court of chancery.

All matters of which complaint is made may be redressed by action of the city council, and its orders in the premises may be enforced by appropriate penalties. There can, therefore, be no warrant for the interference of a court of chancery.

The decree will be reversed and bill dismissed.

*Decree reversed.*