# CHARLESTON.

## CITY OF MOUNDSVILLE *v.* OHIO R. R. Co.

Submitted June 2, 1892.—Decided November 26, 1892.

1. MUNICIPAL CORPORATIONS—SEAL—BILL IN CHANCERY.
    A bill in equity in the name of an incorporated city, signed by counsel, need not have the city seal annexed. (p. 94, 95.)

2. MUNICIPAL CORPORATIONS—STREETS AND HIGHWAYS—RAILROAD COMPANIES—MANDAMUS—NUISANCE—EQUITY.
    License from a city council to a railroad company to build its road across, along, or upon a public street gives it no power to destroy the street, and the company is bound to restore the street to its former state, or to such state as not unnecessarily to have impaired its usefulness for the public, and also to build proper crossings over the railroad, and keep them in good repair. If it

fail to do so, the company may be compelled to do so by *mandamus*; and as the company is guilty of maintaining a nuisance, equity may entertain a bill to abate such nuisance, and may compel the company to perform its duty.   (p. 97.)

3. Municipal Corporations—Jurisdiction.
   Any powers the council of the city may have do not prevent the Courts from taking jurisdiction.   (p. 106.)

*V. B. Archer* for appellant:

I.—*Court erred in overruling defendant's demurrer to original and amended bills.*—34 Wis. 450; 2 High Inj. § 1248; 7 Paige 261; 35 W. Va. 433.

II.—*Court erred in rendering final decree.*—35 W. Va. 217; 1 Dill. Mun. Corp. § 422; Code (1891) c. 54, s. 22; Acts (1866) c. 60; Code (1868) c. 47, s. 25; 1 Dill. Mun. Corp. (4th Ed.) § 310; Id. 304; 70 Mo. 603; 76 Ill. 317; 18 W. Va. 186.

III.—*An injunction will not lie to enforce a municipal ordinance.*—7 Paige 261; 17 Am. Rep. 446; 1 High Inj. (3rd. Ed.) § 788.

IV.—*A municipal corporation must enforce its ordinances. Courts of Equity can not supersede the Council of a City.*—92 Ill. 170.

V.—*If an injunction will be granted, it will be because the act complained of is a nuisance per se.*—2 High Inj. (3rd Ed.) § 1248 and n. 1; 23 W. Va. 406; 33 W. Va. 1; 35 W. Va. 57; Id. 481.

VI.—*A mandatory injunction is a preventive remedy only.*—7 Am. and Eng. Ency. L. 789, s. 5 and notes.

VII.—*A mandatory injunction is granted only to execute the decree or order of the Court.*—20 N. J. Eq. 379.

VIII.—*A mandatory injunction is never granted in a doubtful case.*—78 Am. Dec. 441.

IX.—*Plaintiff's rights must be established in a court of law.*—40 N. Y. 207.

X.— *When act complained of has been acquiesced in, mandatory injunction will not be awarded.*—2 Pom. Eq. Juris. § 1260.

XI.—*Alleged ordinance contains conditions not warranted by statute.*—Code (1891) c. 54, s. 50 sub. div. 6.

XII.—*Plaintiff has an adequate, ample and complete remedy at law.*—35 W. Va. 59; Id. 458.

94    MOUNDSVILLE v. OHIO R. R. CO.

*J. A. Ewing* for appellees:

I.—*Permanent obstructions in streets, endangering life and obstructing the use of the streets are nuisances which a court of equity can enjoin and abate.*—73 Ind. 185 ; 94 Ind. 443 ; 55 Am. Rep. 273 ; 26 Am. Dec. 654 ; 46 How. Pr. 389 ; 100 Pa. St. 182 ; 38 Am. Rep. 117 ; 66 Ia. 257 ; 16 Pick. 175 ; 19 Pick. 147 ; 12 N. Y. 264 ; 62 Wis. 387 ; 17 Ill. 249 ; 7 Johns. Ch'y 322 ; 6 Munf. 306 ; 6 Paige 563 ; 6 Rand. 245 ; 13 W. Va. 476 ; Id. 485 ; 6 Jons. Ch'y 46 ; 30 Am. Dec. 564 ; 1 Mich. 202 ; 32 Am. Dec. 413 ; Wood Nuis. (2d Ed.) § 787.

II.—*For the principles involved and the right to maintain this proceeding for like causes, see* 23 Beav. 193 ; 3 Sumn. 189 ; Kerr Inj. 330 ; 25 Fed. Rep. 654 ; 50 Ill. 459 ; 13 W. Va. 476 ; 8 Sims 193 ; 40 N. Y. 191 ; High Inj. 478 ; 34 Wis. 328 ; 49 Ill. 33.

III.—*Held proper remedy, if Railroad Company were to build or grade a highway.*—2 W. R. 378 ; 1 Sawy. 470 ; 99 Mass. 285 ; 10 Am. & Eng. Ency. L. 789–791 and notes.

IV.—*Printed volume of ordinances of city admissible as evidence.*—Acts (1889) p. 16, s. 15 ; 35 W. Va. 217, 218.

V.—*Railroad Company must comply with the conditions and restrictions in the ordinance granting to it use of the streets.*—1 Dill. 393 ; 27 Pa. St. 339 ; 18 N. Y. 347 ; 49 N. Y. 657 ; 9 Wall. 50 ; 9 Bush 127.

VI.—*Track must not be so laid on highway as to permanently obstruct use of the same by the public.*—11 Am. St. Rep. 395, 402 ; 23 N. H. 83 ; 2 Sher. and Redf. Neg. (4th Ed.) § 359 ; 116 Ind. 446 ; 55 Am. Dec. 177.

BRANNON, JUDGE :

The city of Moundsville filed a bill in the Circuit Court of Marshall county against the Ohio River Railroad Company asking a mandatory injunction to said company to put a street in certain order and do certain work according to a municipal ordinance granting the company right to construct its road through the town (now city) of Moundsville ; and, a decree having been made granting such relief, the railroad company has appealed.

The first point presented in argument as error is that the

bill is not attested by the seal of the city. If we treat a municipal corporation as a private aggregate corporation, still we hold that a bill of an aggregate corporation need not have the seal annexed. The books of equity pleading, so far as I see, only require bills by such corporations to be drawn in the name of the corporation and signed by counsel, and I see no requirement of a seal. In *Coal & Iron Co.* v. *Detmold,* 1 Md. Ch'y 371, it is pointedly decided that such a bill need not have the corporate seal; and that the fact, that it is the bill of the corporation, is sufficiently vouched for by the signature of counsel. 1 Daniell, Ch. Pr. 311, note 7.

No case is cited to support the point except *Teter* v. *Railroad Co.,* 35 W. Va. 433 (14 S. E. Rep. 146). That case holds correctly that the answer of a corporation must be signed by its president, with its seal affixed; but it does not follow that a bill must be so attested. The reason an answer must have the seal is that under the common chancery practice answers must be sworn to, and, as corporations can not be sworn, the seal must verify the act—a reason not applying to bills.

Another point made against the decree is that a copy of the municipal ordinance, made an exhibit with the bill, is not filed, and the court overruled a motion by the defendant to compel the city to file it. The bill definitely alleges the passage of an ordinance by the town council giving the railroad company leave to build its road through the town, and that the company accepted it and built under it; and the bill goes on to allege specifically that the company failed to perform its duties under the ordinance in certain defined particulars, namely: that it constructed its track upon and along a certain street, and in so doing put a fill several feet high for a great distance along it, but neglected and refused to make the fill the full width of the street, as required by section 9 of the ordinance, leaving the street unfit for wagon transportation; and neglected and refused to construct the railroad track so that the tops of the rails should be as nearly level with the surface of the street as required by section 2 of the ordinance; and to fill up and ballast its track between the cross-ties so as to insure a smooth sur-

face, to the end that wagon transportation and travel should not be impeded, as required by section 9 of the ordinance; and to make sewers to drain off water from the street as required by section 2 of the ordinance; and to keep the street around and about its depot in good order and repair, so that access might be had thereto, and that the same was bad and out of repair, in violation of section 4 of said ordinance; and to restore the street to as good order and condition as it was in before the construction of the railroad, as required by section 7 of the ordinance.

With allegations in the bill of the adoption of the ordinance, and the points in which it was not performed, in greater detail than just stated, stating, in effect, what the particular sections provided, the company filed its answer, not simply admitting the passage of the ordinance, but saying that it had obtained the ordinance from the council, and had accepted it and built its road under it. Furthermore, a deposition exhibits a printed ordinance, and on the hearing it was present.

Perhaps this was, as it is said in argument to be, a part of the printed ordinances purporting to be issued under authority of council, and, if so, is evidence *prima facie* of the ordinance under section 15, c. 4, Acts 1890, relating to the city of Moundsville, though it is not in the bill or deposition stated to be such printed copy. Be this as it may, if an ordinance, such as the bill alleges, existed, it would be a basis of the relief asked, and its existence as pleaded was admitted. The counsel seems to call for a certified copy; but, if the ordinance exist as pleaded and admitted, where the necessity of its production? If essential to the defendant's case, it could produce the public document. There is not even a hint that the ordinance appearing in the case is not a true copy of the ordinance. We can not see that in any possible view the defendant has suffered any injustice from the nonproduction of a certified copy, and it would be very technical to sustain any exception on this score; in fact we do not think the point tenable.

Another contention for the appellant is that there is no equity shown by the bill as there is adequate remedy at common-law, and that equity will not enforce specific exe-

cution of a municipal ordinance. While railroads are now more than ever of primary public importance, and must be accorded their just legal rights, the common highways of all the people are of at least equal importance, and have been favored and fostered, and the public interest in them defended and vindicated, in all ages of the common law, and in our days the courts everywhere manifest anxious solicitude in their preservation, preferring them seemingly over almost all other interests.

By the common-law, if a railroad or canal company cross or build its work upon a public highway, it must make and maintain a proper, convenient, and safe crossing, and restore the highway to as good condition for public use as the condition in which it was before such interference with it, though such company be acting under leave from the proper authority; and such leave to cross or impinge on the highway is not to be construed to give liberty to destroy the highway, unless the legislature has so plainly enacted. This must be so from the very necessity and justice of the case, and from the fact that the license to invade the highway is granted at the instance and for the private benefit of the company or person, and he who enjoys the convenience or benefit must bear the burden. *Qui sentit commodum sentire debet et onus.* *State* v. *St. Paul, M. & M. Ry. Co.*, 35 Minn. 131 (28 N. W. Rep. 3); *Palatka & I. R. Co.* v. *State*, 23 Fla. 546 (3 South. Rep. 158); *Northern Cent. R. Co.* v. *Mayor, etc.*, 46 Md. 425; *People* v. *Chicago, etc., R. Co.*, 67 Ill. 118; *Reginia* v. *Inhabitants, etc.*, 69 E. C. L. 843; 2 Wood, Ry. Law, 975; 2 Shear. & R. Neg. § 415; Elliott, Roads & S. 499.

When I speak of the duty of restoration of the highway to its former condition, I do not mean it literally, for sometimes that would be impossible, and inconsistent with the joint use of the same ground by highway and railroad; but, though "restoration," as here used, may not mean "restoration to the same surface or elevation," yet it does mean that the highway must be brought back to its former usefulness, and rendered as passable as before, so as not unnecessarily to impair its usefulness for ordinary travel. Such is the meaning and language of our statute. Acts 1872–73, 224; Code 1891, 530; 1 Ror. R. R. 288.

Our act requires the highway to be restored to its former state, "or such state as not to have unnecessarily impaired its usefulness;" and the presence of the latter clause, and the word "unnecessarily," found in it, induce me to conclude, with the New York court in *People* v. *Dutchess & C. R. Co.*, 58 N. Y. 165, discussing a statute having the same words, that it implies that the usefulness of the highway may have been somewhat impaired, either in construction or maintenance of the railroad, but that it is quite certain that it does not mean that the highway shall be rendered useless, but that it does mean that it shall be preserved for public travel, and to permit at the same time the laying of the track upon it. The usefulness of the highway may be partially impaired, but the highway must be put in such condition as to be conveniently and safely passable.

The duty thus imposed is an important one for the public, and it should be enforced, not arbitrarily or oppressively, but fairly and reasonably, to subserve and protect the public interest and right. The common law imposed such duty as stated above, and the statute has but made it an imperative legislative command. As railroads are necessary, it has given them leave to cross and build upon and along highways, but has imposed upon them the imperative duty, no matter what its performance cost, of thus restoring the highway, so as to preserve it for public use, a grant coupled with a condition. When the company has done that which complies with this condition it has done its duty; anything short of this is an omission violating common and statute law, common justice, and public welfare.

While the company has a discretion as to the manner of performing these duties, it is a ministerial discretion. The act must be done, and there is no discretion whether it will or will not do it. If the mode chosen fails to execute the duty, though the company claims that it is adequate, the law by *mandamus* will compel a proper performance, pointing out in the writ the point of failure, and what must be done so that there be no further failure. *People* v. *Dutchess & C. R. Co.*, 58 N. Y. 152. Where the old road is taken or invaded, a new way must be made, so as to do the least

injury possible to the old road intersected or crossed. *Northern Cent. R. Co.* v. *Mayor, etc.*, 46 Md. 425.

The current of authority as to railroad crossings over public highways is that the duty of maintaining them is continuous and permanent. In this State, the letter of clause 6, § 50, c. 54, Code, makes it permanent, by requiring the company to keep crossings in repair; but it is not so as to other parts of roads once properly restored. Work of repair on roads may be safely done by the public, but not so as to crossings, for this would interfere with trains. There is no reason to require the company to keep in repair substituted roads. *People* v. *Troy & B. R. Co.*, 37 How. Pr. 427; *People* v. *Chicago., etc. R. Co.*, 67 Ill. 118; *Eyler* v. *County Com'rs*, 49 Md. 257; *Cooke* v. *Railroad Co.* (Mass.) 10 Amer. & Eng. R. Cas. 328, and note; 1 Ror. R. R. 456; Ell. Roads & S. 32; *Wellcome* v. *Leeds*, 51 Me. 313; 1 Redf. R. R. 399, 418.

This duty falls upon any company succeeding the company on which it at first rested by lease, assignment, or consolidation. *Ricketts* v. *Railway Co.*, 33 W. Va. 433 (10 S. E. Rep. 801); *People* v. *Chicago, etc., R. Co.*, 67 Ill. 118; *Wasmer* v. *Delaware, etc., R. Co.*, 80 N. Y. 212; *Railroad Co.* v. *Commissioners*, 31 Ohio St. 338; *Chicago, etc., R. Co.* v. *Moffitt*, 75 Ill. 524; opinion in *Baltimore & O. R. Co.* v. *Noell's Adm'r*, 32 Gratt. 398; 2 Wood, R'y Law, §§ 486, 489; 1 Ror. R. R. 592; *Western Union R. Co.* v. *Smith*, 75 Ill. 496; Code, c. 54, s. 53.

This obligation to make and maintain crossings seems not to apply to new highways made after the construction of the railroad. *Northern Cent. R. Co.* v. *Mayor, etc.*, 46 Md. 425; *State* v. *Wilmington, etc., R. Co.*, 74 N. C. 143; 2 Wood, Ry. Law, 980; *Morris, etc., Co.* v. *State*, 24 N. J. Law, 62.

Thus the duty resting upon the railroad companies is plain, and the law must afford some adequate process for its enforcement. What is such process? That *mandamus* is an appropriate remedy I have no doubt, as abundant authorities show. Its mere definition implies this.

In *State* v. *Northeastern R. Co.*, 9 Rich. Law, 247, it is held that "*mandamus* is the appropriate remedy to enforce

performance of duties by artificial bodies," and proper to compel a railroad company to construct a road pursuant to charter in crossing navigable streams so as not to obstruct navigation, though indictment lies for the nuisance.

In *Indianapolis, etc., R. Co.* v. *State,* 37 Ind. 489, held that *mandamus* lies to require railroad company having track upon, along, and over street to so build its road and level and grade the street its full width as to render street and crossing convenient for the public.

So in *People Chicago, etc. R. Co.,* 67 Ill. 118, *mandamus* was held proper to compel company to restore a street to its proper condition.

Authorities are very numerous as to the efficacy of this writ in this matter. Merrill, Mand. § 159; *State* v. *St. Paul, M. & M. Ry. Co.,* 35 Minn. 131 (28 N. W. Rep. 3); Elliott, Roads & S. 33; 2 Wood, Ry. Law, 967, 968; 2 Ror. R. R. 933, 934; 2 Dill. Mun. Corp. note 1 to section 708; High, Extr. Rem. §§ 319, 320; *State* v. *Gorham,* 37 Me. 451; *Cambridge* v. *Charlestown, etc., R. Co.,* 7 Metc. (Mass.) 70; *People* v. *Dutchess & C. R. Co.,* 58 N. Y. 152; *People* v. *New York Cent., etc., R. Co.,* 74 N. Y. 302; *Boggs* v. *Railroad Co.,* 54 Iowa, 435; 6 N. W. Rep. 744; *State* v. *Railway Co.,* 33 Kan. 176; 5 Pac. Rep. 772; *Cooke* v. *Railroad Co.,* 10 Amer. & Eng. R. Cas. 328, and elaborate note; *In re* Trenton Water Power Co., 20 N. J. Law, 559; *Habersham* v. *Canal Co.,* 26 Ga. 665.

But this suit is in equity. Can it be maintained? It is contended that it can not, because damages at law will effect the full remedy? This is plainly not so. That the city has right to move in the matter is clear, because our statute and decisions give it control over streets, and make it liable for defects. It represents the public interest. *Town of Jamestown* v. *Railroad Co.,* 69 Wis. 648; 34 N. W. Rep. 728; 2 Wood, Ry. Law, 992, note 1; *Greenwich* v. *Easton, etc., R. Co.,* 24 N. J. Eq. 217; *Town of Troy* v. *Cheshire R. Co.,* 3 Fost. (N. H.) 83; *Rio Grande, etc., R. Co.* v. *Brownsville,* 45 Tex. 88.

Even though the company be liable in damages to any one injured by defective street or crossing, the city is liable in the first instance, or rather remains so, notwithstanding

the company's liability, though, after recovery from it, the city might sue the company for reimbursement. Shear. & R. Neg. §§ 301, 384, 414.

Is it possible that the city can be limited to a suit for damages? When it sues, what will be the measure of its damages? Shall it recover for every vehicle broken or injured or delayed in its course? Or for every person injured or delayed in his pressing errand, or at all inconvenienced? And would any number of suits by the city give remedy to the people who daily need the street? Must the city restore the street and make the crossing at its expense, and then sue the company? Surely not. It can not go upon the track and endanger trains by making crossings. Must it sue and sue, again and again, as the evil continues? We can not compel it to undergo such endless litigation in a multiplicity of suits, and no number of them affording adequate relief. It is the boast and pride of equity to avoid this.

What the city needs is specific performance by the railroad company of the duty resting upon it, and no other relief is effectual. It is now settled that injunctions are not only, as is usually the case, preventive or prohibitory, but also mandatory, commanding positive, affirmative action to be taken or done by the defendant, as *mandamus* does at law.

At one time the mandatory injunction, because injunction had always been couched in prohibitory language, was framed in that form only by prohibiting the doing or continuing to do a given thing, thereby compelling the party to do the thing which it was desired he should do, because, by continuing to do as he had done, he became liable to punishment; but in later times this species of injuction has lost this delicacy, and now, when used, assumes the form of command to do a specific act. Still it is rarely used, and not when there is adequate legal remedy, say High. Extr. Rem. § 2, and Kerr, Inj.* p. 48.

While, as Mr. High says, injunction is a preventive, and *mandamus* a remedial, process, the former being usually applied to prevent future injury, the latter to redress past grievances, the function of injunction being to restrain ac-

tion and enforce inaction, and that of *mandamus* to set in motion and compel action, yet mandatory injunctions exist.

In *Walkley* v. *City of Muscatine*, 6 Wall. 483, the opinion says that injunction is not an affirmative remedy, and that it is only used in the later character to carry out decrees; that is, where on other grounds equity has jurisdiction.

Very high authority however sustains equity jurisdiction in such a case as this.

In *State* v. *Dayton, etc., R. Co.*, 36 Ohio St. 434, the bill asked to enjoin a railroad company from building its road in a certain highway, and to compel it to remove obstructions therein, and build its road so as to leave the highway in passable condition, the prayer being for restraint and action; and the Court sustained the injunction, and held that, as incident to the restraint, it might prescribe what change in the road would supersede the injunction. This hardly asserts that a bill which, like the one in this case, asked no manner of a restraining order, but only that the company be compelled to restore the street and make crossings and sewers, can be maintained.

Two cases in Wisconsin—*Town of Jamestown* v. *Railroad Co.*, 69 Wis. 648, (34 N. W. Rep. 728) and *City of Oshkosh* v. *Railroad Co.*, 74 Wis. 534 (43 N. W. Rep. 489)—hold that mandatory injunction lies to compel a railroad company to put a highway in condition for travel; but the point of jurisdiction was not considered.

The case of *Brooke* v. *Barton*, 6 Munf. 306, so much relied upon by the city to support equity jurisdiction, is not, in my opinion, apposite. A party sold lots of land in a town, including the use of streets laid down in the plat by which the lots were sold, covenanting that the purchaser should always enter and enjoy the lots with the streets without hindrance from the seller, and it was held that equity would compel him to remove obstructions in the streets, and open them. Now, it is plain to be seen that the use of the streets was appurtenant to the lots—a part of the realty—and it was only the common exercise of the jurisdiction in specific performance of a sale of realty, as to which all agree that the remedy at law is inadequate.

In *Storer* v. *Great Western, etc., R. Co.*, 2 Younge & Ch.

48, the railroad company purchased land for right of way, and agreed to construct and maintain an archway, and the English high court of chancery enforced the construction of the arch. The vice chancellor said it was competent to enforce specific performance of defined work, as in performance the plaintiff had a material interest, and damages would not be adequate. I have not met with other cases pointedly applicable.

In *Manchester, etc., R. Co.,* v. *Worksop Board of Health,* 23 Beav. 198, and *Spencer* v. *London & B. R. Co.,* 8 Sim. 193; 8 Eng. Ch'y 192, injunctions negative in form to prevent continuance of sewer and structure already made were allowed ; in *Webb* v. *Portland Manuf'g Co.,* 3 Sum. 189, to prevent diversion of stream by an act already done; and in *Corning* v. *Troy, etc., Co.,* 40 N. Y. 191, to compel restoration of stream already diverted—were allowed.

But these cases are not pointedly applicable—*First,* because there the works had been made, and their continuance was enjoined, thereby compelling demolition of the injurious works, whereas here the decree is not to undo, but do work as yet not done; the form of the injunction not being to restrain the company from using its road until the work be done, or to restrain it from continuing to allow the road to be in bad and insufficient repair, and the crossings over it inadequate and insufficient; and, *second,* there merely private rights were involved, and *mandamus* would not lie, whereas here it is sought to compel a chartered corporation to perform a duty to the public, and *mandamus* lies. Other cases cited are ordinary restraining injunctions, the mandatory order being incidental to carry out the decree on final hearing.

It is urged in argument that a railroad interfering with a street without restoring it is a nuisance, and therefore equity has jurisdiction. Does a railroad company, when, under license to do so, given by competent authority, it takes a highway for its track, or crosses one, but fails to make a proper restoration or crossing so as to preserve the highway fit for travel in the manner required by law, commit a public nuisance ? It is claimed that, as it invades the highway under authority, it is not guilty, though it fail to

perform this duty. I think reason and authority hold it guilty of nuisance; certainly for the purpose of civil proceedings for the recovery of damages or abatement of the nuisance.

The invasion of a highway without authority is a public nuisance; the track itself, in such a case, is an obstruction and nuisance; the bad street it leaves, with bad crossings, is a nuisance; and where there is a grant of authority the grant is construed most liberally in favor of the public and rigidly against the company. *Charles River Bridge* v. *Warren Bridge*, 11 Pet. 420; *Com.* v. *Erie, etc., R. Co.*, 27 Pa. St. 339; *City of Minneapolis* v. *St. Paul, M. & M. R'y Co.*, (Minn.) (28 N. W. Rep. 3); *Tracy* v. *Troy, etc., R. Co.*, 38 N. Y. 433.

Railroad companies must stand on a strict construction of their chartered privileges. With the immense powers freely given, this much restraint is essential to public right, said the Supreme Court of Pennsylvania in *Com.* v. *Pittsburgh & R. R. Co.*, 24 Pa. St. 161, citing authorities. Especially must we construe it thus when the concession of right of way is accompanied by a provision, imperatively fixed upon the company by law and ordinance, binding the company to restore the road to passable condition, and make crossings—a condition annexed to the grant to subserve a vital public purpose.

Acts done pursuant to the license are sheltered under it; but, if they depart from its obligation to an extent to be contrary to the law, they are not sheltered, and are as if the license had not been granted. That license can not be appealed to for justification when it has been violated in letter and spirit. It could only be justified by performance of the condition. Authorities to sustain this proposition are many.

"Where one has a license to interfere with a highway— as where a railroad company has authority to lay its track along, under or over a highway—the terms of the license, so far as it directs the manner of such interference, must be complied with. Interference in any other mode is a public nuisance." 2 Shear. & R. Neg. § 359. See 2 Wood, Ry. Law, §§ 271, 275; *Hamden* v. *New Haven, etc., Co.*, 27

Conn. 158; *Com.* v. *Nashua, etc., R. Co.*, 2 Gray, 54; *Com.* v. *Proprietors, etc.*, Id. 339; *Com.* v. *Erie, etc., R. Co.*, 27 Pa. St. 339; Wood, Nuis. § 750; *Palatka & I. R. Co.* v. *State*, 23 Fla. 546 (3 South. Rep. 158); *Evansville, etc., R. Co.* v. *Crist*, 116 Ind. 446 (19 N. E. Rep. 310); *Little Miami R. Co.*, v. *Commissioners*, 31 Ohio St. 338; *Louisville etc., R. Co.* v. *State*, 3 Head, 523; 2 Whart. Crim. Law, § 1476; *People* v. *New York Cent. etc., R. Co.*, 74 N. Y. 302; *Gear* v. *Railroad Co.*, 43 Iowa, 83; *Northern Cent. R. Co.* v. *Com.*, 90 Pa. St. 300; *State* v. *Vermont Cent. R, Co.*, 27 Vt. 103; 1 Bish. Non-Cont. Law, § 420; *Paducah, etc., R. Co.* v. *Com.*, 10 Am. & Eng. Ry. Cas. 318; *Warren R. Co.* v. *State*, 29 N. J. Law, 353; *New York & G. L. R. Co.* v. *State*, (N. J. Sup.) 13 Atl. Rep. 1. So it being a public nuisance, equity has jurisdiction.

True, we find it laid down, that equity has not jurisdiction in cases of public nuisance, where a complete remedy exists at law; but so large and widely used is this jurisdiction in public nuisances, that it is hard to exclude it in any case, and the statement in 2 Beach, Mod. Eq. Jur. § 743, is substantially correct nowadays, that, "notwithstanding the legal remedies for a public nuisance, equity will interpose by injunction in a proper case where the nuisance is of a permanent character," as in this case.

Here the remedy needed by the complainant is one which shall judicially determine whether the defendant has complied with its obligation or duty, and, if it has not, then to abate the nuisance by requiring a cessation of the present state, and the performance of the company's duty. In Massachusetts it has been held that a town may go into equity to test whether a railroad company has performed its obligation as to restoring a road, and that, as incident, there may be, upon decree in its favor, a mandatory injunction of performance. Such was this case.

The court had jurisdiction to adjudicate upon the question of whether the company had fulfilled its obligation, and, if not, to make an order that it do so. Really, as is said in 3 Pom. Eq. Jur. § 1359, it is in no sense an injunction, though called a "mandatory injunction," but an order for abatement of nuisances. Courts of equity exer-

cise a very salutary jurisdiction in matters of nuisances to adjudge the question of nuisance and abate them. The remedy by *mandamus* would be likely adequate, but is more formal, and not as flexible, as that in equity. In *mandamus* the judgment would be final and inflexible, whereas equity possesses a capacity to modify its order to suit changing circumstances, and is, if there is any difference, more adequate and complete a remedy than *mandamus*. *Keystone, etc., Co.* v. *Summers*, 13 W. Va. 476, holds that equity has jurisdiction to prevent public nuisance, though it does not pointedly decide the point here involved.

Not without force may it be said, too, that, as the company asked and accepted the ordinance passed by the council with the condition that it would restore the street, it became its contract, and it ought to be enforced under the undisputed jurisdiction of equity to decree specific performance, as the work concerned the very land occupied by the street. Equity does not generally enforce performance of merely personal contracts—as to build a house or other work [*Shepherd* v. *Groff*, 35 W. Va. 123 (11 S. E. Rep. 997).; 3 Pom. Eq. Jur. § 1341]; but, if any undertaking should be so enforced, this would seem to be one. The construction of a house was compelled in *Birchett* v. *Bolling*, 5 Munf. 442. It has been held that where a right of way imposes duties and obligations on a railroad company it raises an implied undertaking from its acceptance that the company will comply, and specific performance will be decreed against the company. Ror. R. R. 320, citing *Gray* v. *Railroad Co.*, 37 Iowa, 119; *Baker* v. *Railroad Co.*, 57 Mo. 265, and other cases. In this case there was a condition in the grant of license to do work on the land occupied by the city as a street. It would not be going far to apply the same principle here.

The contention that the city council has control of streets, leaving courts without jurisdiction, is untenable. Certainly the important functions of the judiciary would not be ousted by the municipal powers by slight implication. Those powers would only afford cumulative remedies. The case of *Cairo, etc., R. Co.* v. *People*, 92 Ill. 170, was under a statute giving council control over railroads in streets·

of the town, and is likely untenable and contrary to reason and authority. Opinion in *City of Minneapolis* v. *St. Paul, M. & M. Ry. Co.* (Minn.) (28 N. W. Rep. 3) ; *People* v. *New York, etc., R. Co.,* 74 N. Y. 302 ; *Com.* v. *Nashua, etc., R. Co.,* 2 Gray, 54. No acquiescence will bar the public right, as it would in case of private individuals. The nuisance is continuous. *Northern Cent. C. Co.* v. *Mayor, etc.,* 21 Md. 93, 105.

It is argued that the city ordinance goes beyond its power in requiring sewers and other things, not specified by, and in excess of, those required by clause 6, § 50, c. 54, Code. I do not regard the point material, for the reason that the decree commands nothing to be done by the company but those pertaining to the restoration of the highway ; but, as the point is made, I shall say that, while that statute gives corporations the right to occupy highways, yet it contains a proviso that before doing so they must either obtain the consent of the authorities having control or jurisdiction of the same, or condemn the same. For what purpose is such consent required ? Is the council or county court only to say yes or no, without power to impose terms required by the exigencies or circumstances of the particular case?

The Maryland court of appeals, upon a similar statute, held that the right to give or withhold consent necessarily involved the right of prescribing terms and conditions accompanying the assent. *Northern Cent. R. Co.* v. *Mayor, etc.,* 21 Md. 93. The opinion cites *Mager* v. *Grima,* 8 How. 490. And the distinguished Judge DILLON, passing upon a similar statute of Kansas, held that the city could impose conditions on the grant, and, if accepted by the company, they are binding on the parties ; and that, where the assent of the city was on condition that the company build a depot in a certain part of the city, and pave a street, the company could not enjoy the grant, and not comply with the condition. *Railroad Co.* v. *Leavenworth,* 1 Dill. 393.

On the facts, we can not reverse the decree, since the evidence conflicts. The case turns on the evidence, and preponderates in favor of the decree.

DECREE AFFIRMED.